# EXHIBIT B

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**JAMES EVERETT SHELTON**
    Plaintiff

-against-

                            Civil Action No. 2:18-cv-02070-NIQA

**TARGET ADVANCE, LLC**
    Defendants

_____

**DEFENDANT TARGET ADVANCE, LLC's MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO RULES 12(b)1 and 12(b)6**
_____

By: Norman M. Valz, Esq.– Attorney for Movant
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT………………………………………………1

II.    STANDARD OF REVIEW .................................................................................3

     A. Federal Rule of Civil Procedure 12(b)(1) ................................................. 3
     B. Federal Rule of Civil Procedure 12(b)(6) .................................................4

III.   ARGUMENT ..................................................................................................... 4

   A. Shelton Lacks Constitutional Standing Because He Has Suffered No
       Concrete Injury ........................................................................................4
   B. Shelton Fails to State a Claim Because He Is Outside the "Zone of Interest"
       of Statute……………………………………………………………….. 11

   CONCLUSION……………………………………………………………...…16

# TABLE OF AUTHORITIES

CASES                                                                      PAGE

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................4

*Ballentine v. United States*,
    486 F.3d 806 (3d Cir. 2007).....................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007)………………………………………………………4

*Constitution Party of Pa. v. Aichele*,
    757 F.3d 347 (3d Cir. 2014).....................................................................................3

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724, 734 (2008)………………………………………………………4

*Doe v. Nat'l Bd. of Med. Examiners*,
    199 F.3d 146 (3d Cir. 1999).....................................................................................7

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009).....................................................................................4

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377, 1388 (2014)………………………………………………………13

*Leyse v. Bank of Am. Nat'l Ass'n*,
    804 F.3d 316 (3d Cir. 2015).....................................................................................11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................6,7,8,9

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
    549 F.2d 884, 891 (3d Cir. 1977))………………………………………………..4

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..................................................................................*passim*

*Stoops v. Wells Fargo Bank, N.A.*,
    197 F. Supp. 3d 782 (W.D. Pa. 2016) ................................................... *passim*

*Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016) .......................4

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
    No. 15-cv-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) ..........................................13

*UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*,
66 F.3d 621 (3d Cir. 1995) ...................................................................................13

**STATUTES**

47 U.S.C. § 227 ......................................................................................................10

Telephone Consumer Protection Act ................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P 12(b)(1) .................................................................................2, 3, 8, 14

Fed. R. Civ. P. 12(b)(6).................................................................................2, 4, 9

S. Rep. No. 102-178, at 1–2 (1991) ............................................................................2

*TCPA Litigation*, U.S. Chamber Institute for Legal Reform, at 1 (Oct. 2013) .............................2

*Rules TCPA Implementation*, 30 FCC Record, 7979-80…………………………….……..15

## PRELMINARY STATEMENT

Plaintiff is a professional litigant of cases under the Telephone Consumer Protection Act ("TCPA") and has <u>filed 30 such cases</u> (Plaintiff himself disclosed this fact in response to a Court Order issued by Judge Savage on June 21, 2018[See Exhibit "A" attached herewith]).    Plaintiff's Complaint in this matter used the "Kitchen Sink" method of throwing in parties and claims for action. This Motion seeks to dismiss all claims for lack of standing and failure to state a claim upon which relief can be granted.

Plaintiff James Everett Shelton ("Shelton"), far from being a victim of alleged violations of the Telephone Consumer Protection Act (TCPA), is a serial litigant who has a business model based upon capitalizing on and encouraging his victims (Defendants in his cases) to contact him through a telephone he has allegedly placed on a Do Not Call List.    Shelton has filed thirty (See Exhibits "A" and "B" plus the more recently filed Shelton vs FCS, Docket 2:18-cv-3723-NIQA) cases, each one seeking damages for alleged TCPA violations.    Shelton's business model has been documented on his own website.    Far from being an individual the TCPA was intended to protect, Shelton is a prolific self-litigator who has made a business out of suing companies and seeking statutory damages.

Shelton's company is called "Final Verdict Solutions," and his public

1

website, which can be found at www.finalverdictsolutions.com.    Said website was recently altered, but until the last eight months of operation, said website almost gloats about Shelton's use of the TCPA.    If a company calls the business telephone number listed on his website, which is the same number that Shelton claims form the basis of his present lawsuit, Shelton will "play along" with that company, so he can then sue it for a purported TCPA infraction.

Utilizing this litigation business model, Shelton has filed at least twenty-nine TCPA cases (See Exhibit s "A" and "B").   Congress, however, never intended that the TCPA be used as an enterprising plaintiff's litigation goldmine. The Act is instead meant to protect consumers from actual nuisance and invasions of privacy. S. Rep. No. 102-178, at 1–2 (1991), *as reprinted in* 1991 U.S.C.C.A.N.  Thanks in part to litigious entrepreneurs and serial plaintiffs like Shelton, the TCPA "has become the poster child for lawsuit abuse," generating a "staggering amount of litigation" and exploding far beyond its original scope to instead become a "destructive force that threatens these money-making schemes and resource-wasting abuses must come to an end.

Plaintiffs like Shelton should not be allowed to use the TCPA as a lawsuit-generating weapon to turn a profit.   This Court should dismiss Shelton's complaint for two reasons:

-*First*, Shelton has no Article III standing to bring his claim. An alleged

2

telemarketing call to his business telephone line, which he advertises and
operates in part to generate TCPA lawsuits, does not constitute the kind of
"nuisance" or "invasion of privacy" that the TCPA was meant to remedy.
Shelton therefore has not suffered the kind of concrete, particularized harm
required to confer constitutional standing to sue. In other words, Shelton has
suffered no injury-in-fact, and the Court should dismiss his Complaint for
lack of standing under Federal Rule of Civil Procedure 12(b)(1).
-*Second*, even if Shelton could show a true injury-in-fact, he still lacks
prudential standing. Setting up a business line hoping he will receive
telemarketing calls, so he can then sue for statutory damages to turn a profit,
is not within the "zone of interests" the TCPA protects.

*See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016).
Shelton

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) authorizes dismissal of a complaint where the plaintiff lacks
constitutional standing to sue. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347,
357 (3d Cir. 2014); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).
"The standing inquiry focuses on whether the party invoking jurisdiction had the
requisite stake in the outcome when the suit was filed." *Aichele*, 757 F.3d at 360

3

(citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Where, as here, the moving party advances a "factual attack," the District Court may look beyond the pleadings to ascertain the facts and determine whether they do not support the assertion of jurisdiction. *Id.* at 358. "In a factual attack, the Plaintiff bears the burden of proof that jurisdiction in fact exists, and the court need not presume the truth of the Plaintiff's allegations." *Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## B. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

## III. ARGUMENT

### A.   Shelton Lacks Constitutional Standing Because He Has Suffered No Concrete Injury

4

The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560- 61 (1992)). This case primarily concerns the first element.   The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547-48 (quoting Raines, 521 U.S. at 820, n.3). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting *Lujan*, 504 U.S. at 560). "'For an injury to be "particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560, n.1). Meanwhile, "[a]

5

'concrete' injury must be 'de facto'; that is, it must actually exist." Id. (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. Id. "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (internal citations omitted). Here, because Defendants make only a facial attack on standing in connection with their motion to dismiss, the Court only considers whether, assuming the truth of the allegations in the FAC, Plaintiff has Article III standing.

Plaintiff's alleged concrete harm bears no connection to the alleged violation of the TCPA. See *Spokeo*, 136 S.Ct. at 1549 (holding that "a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III"). Accordingly, Plaintiff has not and cannot satisfy the

6

standing to sue requirements of Article III.

Standing is a crucial prerequisite to any federal lawsuit and requires that the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing each of these three elements. *Spokeo*, 136 S. Ct. at 1547. At the pleading stage, for individual claims and class actions alike, the plaintiff must allege facts demonstrating it has standing to sue. *Id.* & n.6. Merely invoking a federal statute is insufficient,  on its own, to confer standing. *Id.* at 1549; *see also Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) ("_e proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated.")

An injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (citation and alteration omitted). To establish injury at the pleading stage, the plaintiff must allege facts demonstrating that "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560- 61 (1992)).

This case primarily concerns the first element. The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547-48 (quoting *Raines*, 521 U.S. at 820, n.3). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting *Lujan*, 504 U.S. at 560). "'For an injury to be "particularized," it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560, n.1). Meanwhile, "[a] 'concrete' injury must be

8

'de facto'; that is, it must actually exist." Id. (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. Id. "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561 (internal citations omitted).

At least one court has found a plaintiff lacked Article III standing where, as here, the TCPA claim was based on calls to a business number that the plaintiff used specifically to drum up TCPA litigation. Stoops, 197 F. Supp. 3d at 798. In Stoops, the plaintiff purchased several cell phones, hoping she would receive telemarketing calls from companies, so she could then sue them for TCPA damages. Id. She registered her cell phones in Florida, to increase her chances of receiving telemarketers' calls. Id. at 799.  She plaintiff made no bones about her

9

intentions: "I have a business suing offenders of the TCPA[.]" *Id.*

The *Stoops* court rightfully found that, in those circumstances, plaintiff lacked constitutional standing because she hadn't suffered the kind of particularized, concrete harm the TCPA was designed to prevent. *Id.* at 800. Calls to cell phones that plaintiff had purchased to support her TCPA litigation business did "not adversely affect the privacy rights that [the TCPA] is intended to protect." *Id.* Because the plaintiff operated a business designed to generate litigation and profits from telemarketing calls, those "calls did not constitute the nuisance, invasion of privacy, cost, and inconvenience from which Congress intended to protect customers." *Id.* (citation omitted).

In the matter at hand, Shelton operates a business called "Final Verdict Solutions." His public website advertises two business ventures: a professional judgment recovery outfit and a TCPA litigation operation. His company's website even included a link describing this aspect of his business, in the top right-hand corner, under a tab called "JAMES' TCPA CASES". Shelton provided further information to those who click on the link, divulging the manner by which he drums up TCPA litigation: "I played along with your telemarketer script in order to find out who you really are. Now I am going to sue you for violating 47 U.S.C. § 227."







Apart from this case, by his own admission, Shelton has instituted twenty-

Nine (29) other TCPA lawsuits (See Exhibit "B").     He doesn't request that he

never is called back, instead he solicits information from the sales person  "play

11

along" with a potential telemarketer for the purpose of developing the current lawsuit.

Shelton is misusing the TCPA by turning it into a profit-generating scheme. This profit making purpose should deny Shelton Article III standing because neither provides the kind of particularized injury the TCPA is meant to remedy. *See Stoops*, 197 F. Supp. 3d at 800–01 (holding that plaintiff who brought TCPA claims as part of a litigation-generating business lacked standing because she suffered no actual injury-in-fact); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015)

("Someone with a generalized interest in punishing telemarketers, for example, would not qualify [for Article III standing] on that basis alone."). Whether Shelton's TCPA litigation operation was designed to make money or punish telemarketers is immaterial; either way, Shelton cannot establish that he suffered an injury-in-fact. He consequently lacks constitutional standing to bring his suit, and the Court should dismiss his claim under Rule 12(b)(1).

## B. Shelton Fails to State a Claim Because He Outside the Statute's "Zone of Interest"

There is also no prudential standing for Shelton to bring his claim because operating profit seeking TCPA lawsuit business falls outside of the "zone of interests" the TCPA protects. Where prudential standing does not exist, a plaintiff

12

fails to state a claim upon which relief can be granted. *Stoops*, 197 F. Supp. 3d at 803–06; *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15- cv-5182, 2016 WL 4179150, at *15 (N.D. Ill. Aug. 8, 2016).

Prudential standing requires three elements:

> (1) a litigant assert his or her own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the "zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based.
>
> *UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*, 66 F.3d 621, 626 (3d Cir. 1995) (internal citations and alterations omitted).

Shelton cannot establish the third element, which requires that "the injury he complains of . . . falls within the 'zone of interests' sought to be protected *by the statutory provision whose violation forms the legal basis for his complaint*." *Stoops*, 197 F. Supp. 3d at 804 (emphasis in original). The "zone of interests" test "applies to all statutorily created causes of action." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014); *Tel. Sci. Corp.*, 2016 WL 4179150, at *8. Courts have employed an exacting "zone of interest" test in the TCPA context, focusing their inquiry on "the Congressional intent of the statute

and whether the complainant's interests were among the sorts of interest [the TCPA was] specifically designed to protect." *Stoops*, 197 F. Supp. 3d at 805 (citation omitted).

In the *Stoops* case, in applying the "zone of interests" test, the court found it "unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA" because such individuals don't have "the sort of interest in privacy, peace, and quiet that Congress intended to protect. . . ." *Id.*; *see also Tel. Sci. Corp.*, 2016 WL 4179150, at *15 (holding that where the plaintiff intentionally engaged with potential telemarketers to build his business, his alleged injury fell outside of the TCPA's zone of interests).

Shelton, like the plaintiff in *Stoops*, files TCPA actions as a profit-making business.    He has acknowledged as much, admitting on his company's website that he pretends to pose as an interested customer in order to generate lawsuits under the Act.    Shelton, feigned interest in the company's services, and engaged with a sales representative who delivered a sales pitch—all so he could file his present class-action lawsuit. (Compl. ¶¶ 23–28, ECF No. 1.) Having developed this action as part of his lawsuit-generating business model, Shelton does not manifest "the sorts of interests the TCPA was specifically designed to protect." *Stoops*, 197 F. Supp. 3d at 805. His claim therefore fails for lack of prudential standing and should be dismissed under Rule 12(b)(6).

14

In addition, prudential standing requires that (1) a litigant assert his or own legal interests rather than those of third parties; (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances; and (3) a litigant demonstrate that her interests are arguably within the zone of interests indented to be protected by the statue, rule or constitutional provision on which the claim is based. *Stoops v. Wells Fargo Bank*, N.A., 197 F. Supp. 3d 782, 803-804 *13 (W.D. Pa. 2016) (citing *UPS Worldwide Forwarding v United States Postal Serv*., 66 F.3d 621, 625 (3d Cir. 1995)).

In enacting the TCPA, Congress's intent "was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." See *Stoop*s, 197 F. Supp. 3d at 797 (citing In re Rules Implementing the Tel. Consumer Prot. Act. of 1991, 30 FCC Rcd. at 7979-80). In passing the Act, Congress "was animated by outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance." Id.; (stating that "the TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls") (emphasis added). In this case.

III.    **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint must be dismissed in its

entirety and with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

Plaintiff has no standing to act as Plaintiff in this matter, nor has he suffered any

injuries related to the alleged violations of the TCPA.   Plaintiff remains outside

the Zone of Interest for this statute.    Further, Plaintiff's claims against individual

Defendant should be dismissed with prejudice for failure to state a claim upon

which relief can be granted.

Philadelphia, PA

October 5, 2018

Respectfully submitted,

**Law Office of Norman M. Valz, P.C.**

_____
Norman M. Valz, Esq.– Attorney for Movant
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com

.

# Certification of service

The undersigned certifies that true and correct copies of the foregoing was served by the ECF System upon Plaintiff's counsel of record.

Philadelphia, Pennsylvania                              Respectfully Submitted,

October 4, 2018                              _____
                                             Norman M. Valz, Esq.– Attorney for Movant
                                             Law Office of Norman M. Valz, P.C.
                                             PA I.D. No. 61338
                                             205 Arch Street – 2nd Floor
                                             Philadelphia, PA   19106
                                             Tel. (215) 756-2424
                                             Fax (215) 827-5758