IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES E. SHELTON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**PRO SOURCE LENDING GROUP LLC, D/B/A FAST FUND GROUP, D/B/A FAST FUNDS GROUP**<br><br>**AND**<br><br>**BRITTNEY WILSON**<br><br>*Defendants.* | Case No.<br>24-4394<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff James E. Shelton ("Plaintiff" or "Mr. Shelton") brings this Class Action Complaint and Demand for Jury Trial against Defendants Pro Source Lending Group LLC, d/b/a Fast Fund Group, d/b/a Fast Funds Group, and Brittney Wilson, ("Defendants," "Pro Source," or "Wilson") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Pro Source and Wilson violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent as well as calling people who had previously asked to no longer receive calls.

**PARTIES**

4. Plaintiff James E. Shelton is an individual residing in the Eastern District of Pennsylvania.

5. Defendant Pro Source Lending Group LLC, d/b/a Fast Fund Group, d/b/a Fast Funds Group is a corporation owned by Alex Silverman and incorporated and having its principal place of business in Florida.

6. Defendant Brittney Wilson is a natural individual and resident of Florida that placed at least some of the illegal calls complained of at issue here as part of her work for Defendant Pro Source, which such calls violated the TCPA.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has specific personal jurisdiction over Defendants because Pro Source sells its loan products in this District and both Defendants called the Plaintiff at his 484- area code number to attempt to sell him a loan.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the telephone calls at issue were orchestrated into and sent to this District, and therefore a substantial part of the events giving rise to the claim occurred in this District.

## BACKGROUND

**A.   The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

10. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12.     A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

### B. THE TCPA REQUIRES ENTITIES TO HAVE SUFFICIENT POLICIES IN PLACE TO PREVENT UNWANTED CALLS BEFORE MAKING TELEMARKETING CALLS.

14.     The TCPA specifically required the Federal Communication Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

15.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of . . . company-specific 'do not call systems . . .)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

16.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

17.     These regulations are codified at 47 C.F.R. §§ 64.1200(d)(1)-(7).

18.     Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do not call list, train personnel engaged in telemarketing on the existence and use of its internal do not call list, and record and honor "do

4

not call" requests for no less than five years from the time the request is made. 47 C.F.R. §§ 64.1200(d)(1, 2, 3, 6).

19. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. § 64.1200(d)(4).

## FACTUAL ALLEGATIONS

20. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

21. At no point did the Plaintiff consent to receiving telemarketing calls from the Defendants prior to receiving the calls at issue.

22. In fact, the Plaintiff had explicitly revoked any such consent and was placed on Pro Source's internal Do Not Call list as far back as 2021.

23. Plaintiff's telephone number, (484) XXX-XXXX, is a residential, non-commercial telephone number.

24. Mr. Shelton uses the number for personal, residential, and household reasons.

25. Mr. Shelton does not use the number for business reasons or business use.

26. The last time Mr. Shelton used the number for business reasons or business use was in 2019. At that time, as the Eastern District of Pennsylvania held, Mr. Shelton used the number as a mixed-use number.

27. However, since 2019, Mr. Shelton obtained a separate telephone number for that business for which he had previously used the (484) XXX-XXXX number. That new number for the business, Final Verdict Solutions, a business which collects judgments of all types and is a fictitious name for Mr. Shelton, and which is not at issue here, is (484) 312-3300.

5

28. Mr. Shelton's personal (484) XXX-XXXX number does not appear and has not appeared on any website or any other service to which Mr. Shelton has held it out to the world as a business number since at least 2019.

29. Mr. Shelton has not held the number out to the public as a business number, if at all, since May of 2019.

30. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

31. Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

32. Plaintiff's telephone number has been listed on the National Do Not Call Registry since he listed it there in 2015, more than nine years prior to the calls at issue, and years prior to starting his business or using it in the interim time as a mixed-use number.

33. It is not possible to re-register a number on the Do Not Call Registry.

34. The number was therefore properly registered on the Do Not Call Registry at the time of its registration.

35. Plaintiff has never been a customer of Pro Source and never consented to receive calls from Pro Source.

36. Defendant Pro Source has been a defendant in numerous TCPA suits. In fact, Defendant Pro Source has been sued numerous times by numerous plaintiffs for violating the TCPA and calling residential telephone numbers on the Do Not Call Registry to sell them loans.

37. In fact, back in 2021, the Plaintiff settled with Pro Source for illegal calls nearly identical to the ones at issue here placed to the telephone number at issue here, thereby giving notice that Pro Source was not to call him.

38. The Plaintiff was supposed to be, and in fact, to the best of Plaintiff's information and belief, was, placed on Defendant Pro Source's internal Do Not Call list as far back as the 2021 incident, if not earlier.

39. Despite that fact, throughout July of 2024, the Plaintiff received multiple calls from agents of Pro Source who were attempting to sell him loans.

40. Accordingly, it is evident that the Defendant Pro Source has an internal do not call list, but does not follow it because Plaintiff received calls as alleged herein. Defendants therefore violated the TCPA's prohibition against calling a numbers who have asked to be placed on Defendants' internal Do Not Call list.

41. At the time of these calls complained of, as well as during the 2021 interaction, the calls were not made to a business number.

42. Specifically, on July 22, 2024 at 1:30 PM, the Plaintiff received a call from the Defendants at the Caller ID 561-260-XXXX in an attempt to sell him a loan.

43. Upon information and belief, this is Defendant Wilson's personal cell phone number.

44. Upon information and belief, Defendant Wilson is an employee of Defendant Pro Source.

45. Defendant Wilson personally registered, paid for, and sent some of the calls complained of herein, acting at the direction of her employer Pro Source and in an attempt to sell Pro Source's products and services. The telephone number 561-260-XXXX is in her personal name.

46. Defendant Wilson personally sent the illegal communications complained of from that number.

47. Defendant Wilson may be personally liable for the acts alleged in this Complaint with respect to her number pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be

also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

48. Wilson personally committed the TCPA-violative conduct at issue because she personally sent the calls from her dual use cell phone, which she also uses for business purposes, and personally sent those calls, as well as orchestrating the services to be in her personal name.

49. The foregoing facts demonstrate that Wilson had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

50. Thereafter, the Plaintiff received an email with a proposed loan application. The Plaintiff declined to sign the application at 1:41 PM. In so doing, the individual with whom he spoke, Defendant Wilson, was notified that the Plaintiff was not interested and to stop calling.

51. Despite this, the Plaintiff also received a text message shortly after that at 1:46 PM from Defendant Wilson. The message read, "This is Brittney from fast funds group lock me in any question you have feel free to contact me anytime Brittney@fastfundsgroup.com"

52. The calls continued incessantly, including that same day at 3:39 PM from an individual named "Sean" with Fast Funds Group from the caller ID 954-803-8199. Plaintiff also received a call at 3:48 PM from Defendant Wilson at the same caller ID 561-260-XXXX.

53. Thereafter, the calls continued. The Plaintiff received yet another text message from Wilson at 561-260-XXXX, on July 22, 2024 at 3:50 PM, stating, "Good afternoon James Sean my underwriter just spoke with you about the application and sending the bank statements if you like you can tell your assistant to give me a call."

54. The Plaintiff received a call the following day at 10:03 AM from the same caller ID. Upon information and belief, Defendant Brittney Wilson made the call, who by this point had already received actual notice of the Plaintiff's declination to sign the loan application and that the Plaintiff wanted the calls to stop and as the personal recipient thereof had a reasonable amount of time, a few hours and a day, respectively, to comply with the request.

55. Tired of the incessant calls, the Plaintiff emailed Brittney@fastfundsgroup.com at 10:03 AM a third do not call request stating, "`Hi Brittney please stop calling me thank you!`" This was acknowledged via a reply email at 10:09 AM from Brittney which read "`Will do, thank you.`"

56. The illegal calls nevertheless continued, including a text message from Defendant Wilson at 10:06 AM from 561-260-XXXX, which read, "`Good morning James reaching out to see where are we with the application and your assistant giving me a call to provide me the EIN number .. text me back to let me know are you moving forward . Enjoy ur day`"

57. Defendant Wilson sent this message despite the fact that she herself acknowledged the Plaintiff's third do not call request personally.

58. The Plaintiff received at least one final call on July 23, 2024 at 11:17 AM from 954-803-8199.

59. All the calls and text messages were sent to attempt to sell the Plaintiff loans.

60. Under the TCPA, as confirmed by the Supreme Court, text messages are "calls" for the purposes of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016).

61. The calls were unwanted.

62. The calls were nonconsensual encounters.

63. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls.

64. Plaintiff never provided his consent or requested the calls.

65. Plaintiff and the Class have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

9

## CLASS ACTION ALLEGATIONS

66. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

67. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants encouraging the purchase of Pro Source's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Internal Do Not Call Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop or for a copy of Defendants' Do Not Call Policy and (5) within the four years prior to the filing of the Complaint.

68. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

69. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

70. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to

vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

71. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

    a. Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

    b. whether Defendants recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

    c. Whether Defendants have established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

    d. Whether Defendants should be held liable for violations committed on its behalf; and

    e. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

72. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions

would entail. There are hundreds of Class members, such that joinder of all members is impracticable.

73. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

    a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

    b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    c. Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

    d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

74. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

75. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

76. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

77. These violations were willful or knowing.

78. As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

79. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d))
### (On Behalf of Plaintiff and the Internal Do Not Call Registry Class)

80. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

81. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

82. Defendants' violations were negligent, willful, or knowing.

83. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the National DNC Class, and Internal Do Not Call Registry Class, respectfully request that the Court enter judgment against Defendants for:

A. Certification of the National DNC Class as alleged herein;

B. Certification of the Internal Do Not Call Registry Class as alleged herein;

C. Appointment of Plaintiff as representative of the Classes;

D. Appointment of the undersigned as counsel for the Classes;

E. Damages to Plaintiff and members of the Classes pursuant to 47 U.S.C. § 227(c)(5);

F. Injunctive relief for Plaintiff and members of the Classes, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry and/or preventing the Defendants from making calls to numbers which have previously requested that the Defendants not call;

G. Attorneys' fees and costs, as permitted by law; and

H. Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 2nd day of December, 2024.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com