**BLANK ROME LLP**
Jeffrey N. Rosenthal
Thomas P. Cialino
One Logan Square, 130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5553
Facsimile: (215) 832-5553
jeffrey.rosenthal@blankrome.com
thomas.cialino@blankrome.com

*Attorneys for Defendant, Pro Source Lending Group LLC,*
*d/b/a Fast Fund Group, d/b/a Fast Funds Group*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| James E. Shelton, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Pro Source Lending Group LLC, d/b/a Fast Fund Group, d/b/a Fast Funds Group, *et al.*,<br><br>Defendants. | Civil Action No.: 2:24-cv-04394-GAM |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION
## TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

    A.  Plaintiff Files The Complaint, and Pro Source Files a Motion to Dismiss. ............ 2

    B.  Plaintiff Files the Amended Complaint. .................................................. 4

III.  LEGAL STANDARDS. ...................................................................................... 6

    A.  Rule 12(b)(1), Lack of Subject-Matter Jurisdiction. ................................. 6

    B.  Rule 12(b)(6), Failure to State a Claim Upon Which Relief Can Be Granted. ........ 7

IV.  ARGUMENT. ..................................................................................................... 8

    A.  Count I Must Be Dismissed as to Pro Source Because Do-Not-Call Protections Do Not Cover Business-to-Business Calls and Plaintiff is a Serial Litigant Whose Interests are Not Within the Zone of Interests Intended to be Protected. ............... 8

    B.  Plaintiff Fails to State an Internal Do-Not-Call Claim Under Section 227(b). ....... 13

V.  CONCLUSION .................................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................8, 15, 16

*Bank v. Indep. Energy Grp. LLC*,
  No. 12-CV-1369, 2015 WL 4488070 (E.D.N.Y. July 23, 2015)..................................9, 10, 12

*Barton v. LeadPoint Inc.*,
  Nos. 22-35130 and 22-35691, 2023 WL 4646103 (9th Cir. July 20, 2023).......................9, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................8

*FW/PBS, Inc. v. Dallas*,
  493 U.S. 215, 231 (1990).....................................................................................6, 7

*Gould Elecs. Inc. v. U.S.*,
  220 F.3d 169 (3d Cir. 2000)..................................................................................5

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
  458 F.3d 244 (3d Cir. 2006).................................................................................10

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
  134 S. Ct. 1377 (2014).......................................................................................7

*Leyse v. Bank of America Nat. Ass'n*,
  804 F.3d 316 (3d Cir. 2015).................................................................................7

*Long v. SEPTA*,
  903 F.3d 312 (3d Cir. 2018).................................................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)...........................................................................................6

*Pryor v. NCAA*,
  288 F.3d 548 (3d Cir. 2002).................................................................................5

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
  Protection Act of 1991*,
  Report and Order and Further Notice of Proposed Rulemaking, CG Docket
  No. 02-278, 2024 WL 668031 (Feb. 15, 2024) ......................................................14

170591.00002/152165861v.1

*Shelton v. Target Advance LLC*,
No. CV 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) (Quiñones
Alejandro, J.) ............................................................................................................ *passim*

*Simmons v. Charter Commc'ns, Inc.*,
222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) ....................... 14

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ........................................................................................................ 6

*Stoops v. Wells Fargo Bank, N.A.*,
197 F. Supp. 3d 782 (W.D. Pa. 2016) .......................................................................... 11, 13

*Susinno v. Work Out World Inc.*,
862 F.3d 346 (3d Cir. 2017) ................................................................................................ 7

*Worsham v. Disc. Power, Inc.*,
No. CV RDB-20-0008, 2021 WL 50922 (D. Md. Jan. 6, 2021), *amended*, No.
CV RDB-20-0008, 2021 WL 1390310 (D. Md. Apr. 13, 2021) ...................................... 9, 10

*Zion v. Nassan*,
777 F. Supp. 2d 388 (W.D. Pa. 2010) .................................................................................. 5

**Statutes**

47 U.S.C.
§ 64.1200(d) ....................................................................................................................... 3
§ 227 ............................................................................................................................ 3, 10
§ 227(b)(1)(A)(iii) ............................................................................................................ 10

**Other Authorities**

*Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
23 FCC Red. 9779 (June 17, 2008) ....................................................................................... 9

16 C.F.R. § 310.6(b)(7) ............................................................................................................ 8

47 C.F.R.
§ 64.1200 ..................................................................................................................... 1, 16
§ 64.1200(c)(2) ................................................................................................................... 9
§ 64.1200(d) ......................................................................................................... 13, 14, 15
§ 64.1200(d)(1) ................................................................................................................. 14
§ 64.1200(d)(2) ................................................................................................................. 14
§ 64.1200(d)(3) ................................................................................................................. 14
§ 64.1200(d)(4) ................................................................................................................. 14
§ 64.1200(d)(5) ................................................................................................................. 14
§ 64.1200(d)(6) ................................................................................................................. 14

Fed. R. Civ. Proc.

§ 8..............................................................................................................8
§ 8(a)(2).......................................................................................................7
§ 12(b)(1)..................................................................................................1, 6
§ 12(b)(6)..................................................................................................1, 7

iv

Defendant Pro Source Lending Group LLC d/b/a Fast Fund Group d/b/a Fast Funds Group ("Pro Source"), through its undersigned counsel, respectfully requests that Plaintiff James Shelton's ("Plaintiff") *First Amended Class Action Complaint and Demand for Jury Trial* (the "Amended Complaint"), ECF No. 12, be dismissed with prejudice under Rule 12(b)(1) for lack of subject matter jurisdiction. Alternatively, this case should also separately be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.    INTRODUCTION

Despite two attempts to do so, Plaintiff does not and cannot allege a viable telemarketing claim against Pro Source. Plaintiff's most-recent pleading should thus be dismissed with prejudice.

Plaintiff initiated this putative telemarketing class action against Pro Source on August 22, 2024, by filing a Complaint. ECF No. 1. Plaintiff alleged Pro Source made unsolicited phone calls to him and sent unsolicited text messages in or around July 2024. Based on these contentions, Plaintiff alleged violations of the Telephone Consumer Protection Act ("TCPA"), the National Do Not Call Registry ("NDNC"), and the statute's implementing regulations (47 C.F.R. § 64.1200).

On November 6, 2024, Pro Source responded to the Complaint by filing a Motion to Dismiss—wherein it demonstrated how Plaintiff used the telephone number at issue (the "Phone Number") for business purposes in connection with his judgment collection business named *Final Verdict Solutions*, and further, held this number out to the world as a business number. ECF No. 7 at 6-10. In the Amended Complaint Plaintiff now *concedes* that he used the Phone Number as a business number as recently as 2019. ECF No. 12 ¶ 22. Such usage is fatal to his TCPA claims.

In fact, this Court previously dismissed a nearly identical series of TCPA claims that Plaintiff asserted—and that also arose out of similar alleged calls placed to the same Phone Number. *See Shelton v. Target Advance LLC*, No. CV 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) (Quiñones Alejandro, J.). Specifically, this Court held Plaintiff lacked standing to assert

a TCPA claim arising out of the defendant's alleged calls to the Phone Number because Plaintiff used this number for business purposes and thus could not register it on the NDNC. *Id*. at *6. That is exactly what has happened here.

In a desperate attempt to salvage his claims, Plaintiff filed the Amended Complaint attempting to: (1) lodge a series of unsupported allegations that he no longer uses the Phone Number for business purposes, and stopped holding out the Phone Number to the world as a business number in 2019 at the latest; and (2) join Brittney Wilson ("Wilson")—the individual who made the allegedly improper calls at issue—as an additional defendant.  ECF No. 12. Importantly, Plaintiff only included these self-serving allegations *after* Pro Source's filing of the Motion to Dismiss forced him to concede he has used the Phone Number for business purposes and also held it out to the world as a business number.  Moreover, Plaintiff continues to ignore the fact that his decision to hold the Phone Number out to the public as a business number is the sole reason Pro Source was prompted to allegedly contact him regarding potential financing services **for his business**.  Accordingly, Plaintiff cannot now seek to put the genie back in the bottle and undo his prior decision to hold the Phone Number out to the public as a business number.

This Court should follow the same reasoning employed in *Shelton* (and elsewhere) to dismiss the instant claims by Plaintiff—a professional litigant who has filed dozens of TCPA lawsuits, and continues to do so year after year—based on a lack of subject matter jurisdiction. Separately, because Pro Source's alleged calls went to a number that Plaintiff admits was used for business purposes, the Amended Complaint cannot give rise to a viable claim as a matter of law.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Files The Complaint, and Pro Source Files a Motion to Dismiss.

Plaintiff commenced this action by filing a Complaint against Pro Source on August 22, 2024.  ECF No. 1.  In the Complaint, Plaintiff alleged he received eight communications from Pro

Source on July 22-23, 2024—including five calls that were allegedly made and three texts that were allegedly sent to his cellphone. ECF No. 1 ¶¶ 29-37. Plaintiff alleged he used the cellphone at issue "for personal, residential, and household reasons"; that "he does not use the number for business reasons or business use"; and contended this number was placed on the NDNC in 2015. *Id*. ¶¶ 21-25. While Plaintiff described the number at issue as "(484) XXX-XXXX," (ECF No. 1 ¶ 21), his counsel confirmed via email that "Mr. Shelton's full number on which he received the calls is (484) 626-3942." (*See* Declaration of Thomas Cialino ("<u>Cialino Dec.</u>"), ECF No. 7-3 ¶ 5.)

In describing the calls Pro Source allegedly made, Plaintiff claimed Pro Source was "attempting to sell him loans" and that it subsequently sent him an email enclosing a proposed loan application. ECF No. 1 ¶¶ 28-30. Plaintiff contended that he declined to sign the application and told Pro Source he did not wish to receive additional calls. *Id*. ¶¶ 30-36. In the two-count Complaint, Plaintiff asserted: (1) a claim arising out of 47 U.S.C. § 227 based upon Pro Source's alleged calls to a telephone number listed on the NDNC; and (2) a claim arising out of § 227 based upon Pro Source's purported violation of 47 U.S.C. § 64.1200(d). *Id*. ¶¶ 53-62.

Pro Source thereafter filed a Motion to Dismiss Plaintiff's Complaint (the "<u>Motion to Dismiss</u>") on November 6, 2024. ECF No. 7. In the Motion to Dismiss, Pro Source demonstrated that Plaintiff's allegation that he uses the Phone Number for purely residential reasons and not for business purposes was directly contradicted by this Court's findings in *Shelton*. *Id*. Moreover, Pro Source supplied copies of the complaints Plaintiff filed in *Shelton*—as well as the defendant's motion to dismiss in that case—and further demonstrated that the website for Plaintiff's judgment collection business titled Final Verdict Solutions contained a message *confirming* that Plaintiff utilized the Phone Number for business purposes. *Id*. In addition, Pro Source argued that because

3

Plaintiff used the Phone Number in connection with Final Verdict Solutions, he therefore lacked standing to assert a TCPA claim arising out of Pro Source's alleged calls to the Phone Number. *Id*.

    **B.**    <u>**Plaintiff Files the Amended Complaint.**</u>

In lieu of filing a response to the Motion to Dismiss, Plaintiff filed the Amended Complaint on December 2, 2024.  ECF No. 12.  In the Amended Complaint, Plaintiff *concedes* he has used the Phone Number for business purposes and held it out to the world as a business number in connection with Final Business Solutions—a business Plaintiff describes as one "which collects judgments of all types and is a fictitious name for Mr. Shelton." *Id*. ¶¶ 26-29.  But Plaintiff conveniently and conclusively alleges for the first time that: (a) he has not used the Phone Number for business purposes since 2019; (b) he later obtained a separate number for Final Verdict Solutions in 2019; and (c) he has not held out the Phone Number as a business number since 2019. *Id*.  Plaintiff, however, fails to explain how Pro Source was expected to know any of this, and why it would not be entitled to rely on the public-facing use of the Phone Number as a business number.

Moreover, Plaintiff makes self-serving allegations that he purportedly placed the Phone Number on the NDNC *before* he started Final Verdict Solutions and *before* he began using the Phone Number for business purposes.  *Id*. ¶¶ 32-34.  In addition, Plaintiff contends the Phone Number was properly registered on the NDNC because "[i]t is not possible to re-register a number on the [NDNC]." *Id*. Despite Plaintiff's inclusion of these pointless allegations, he remains unable to evade this Court's prior holding in *Shelton* and/or avoid the inescapable reality that he lacks standing to assert a TCPA claim arising out of calls allegedly placed to the instant Phone Number.[1]

---

[1]  In addition, Plaintiff has joined Ms. Wilson as an additional defendant and included a series of new allegations that Ms. Wilson made the calls at issue from her personal cell phone number.  *Id*. ¶¶ 43-48. Such an amendment is irrelevant and cannot salvage Plaintiff's deficient claims.

In *Shelton*, Plaintiff similarly filed a Complaint followed by an Amended Complaint wherein he asserted a series of TCPA claims arising out of allegedly improper calls that the defendant made to the Phone Number. *See* Cialino Dec. at Ex. A.[2] When the defendant filed a motion to dismiss the amended complaint, it included a screenshot from a website for Plaintiff's judgment collection business titled Final Verdict Solutions that contained the following message confirming that Plaintiff utilized the Phone Number for business purposes:

> If you are reading this website, you are most likely a telemarketer that has illegally called my phone.
>
> You are going to be sued.
>
> I played along with your telemarketer script in order to find out who you really are. Now I am going to sue you for violating 47 U.S.C. § 227.
>
> Have a nice day. Put **484-626-3942** on your do not call list. Send me a copy of your do not call policy and hire a really good lawyer.

Cialino Dec. Ex. B at p.11 (emphasis added).

As set forth more fully below, this Court *agreed* with the defendant and held Plaintiff lacked standing to assert a TCPA claim arising out of the defendant's alleged calls to a number on the

---

[2]  In reviewing a motion to dismiss for lack of subject matter jurisdiction, the Court is permitted to review documents outside the four corners of the pleadings. *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000).

To the extent the Court considers this Motion under the alternative ground for failure to state a claim, this Court may still review the documents included with the Cialino Declaration without converting the instant motion into one for summary judgment. "Generally speaking, a trial court has the discretion to address evidence outside the complaint when ruling on a motion to dismiss." *Pryor v. NCAA*, 288 F.3d 548, 559 (3d Cir. 2002). The Court may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached" to the complaint. *Id*. at 560. In addition, the Court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Zion v. Nassan*, 777 F. Supp. 2d 388, 395 (W.D. Pa. 2010).

Each of the documents attached to the Cialino Declaration are matters of public record, are indisputably authentic, and form the basis of Plaintiff's claims. Accordingly, this Court may consider all the documents attached to the Cialino Declaration without converting this motion into a motion for summary judgment.

5

NDNC because he used the Phone Number in connection with Final Verdict Solutions. 2019 WL 1641353 at *6. This Court also noted that Final Verdict Solutions had the sole purpose of luring business-to-business telemarketers into calling the Phone Number—which was held out to the world as a business number—so that Plaintiff could bring TCPA actions against the telemarketers that called him. *Id*. at *5. In addition, this Court stated that Final Verdict Solutions had obtained hundreds of thousands of dollars in judgments, and that Plaintiff had filed at least 29 civil actions seeking relief under the TCPA as of 2019. *Id*.; *see also* Cialino Dec., Ex. C.

By luring Pro Source into calling a business number for the sole purpose of manufacturing yet another series of TCPA claims, Plaintiff followed the same playbook employed in *Shelton*. Thus, Pro Source respectfully submits that this Court should follow the same reasoning set forth in *Shelton* to grant the instant motion and to dismiss the Amended Complaint, with prejudice.

### III.    LEGAL STANDARDS.

#### A.    Rule 12(b)(1), Lack of Subject-Matter Jurisdiction.

The power of the judiciary, rooted in Article III of the United States Constitution, "extends only to 'Cases' and 'Controversies.'" U.S. CONST., art. III, § 2; *Long v. SEPTA*, 903 F.3d 312, 320-21 (3d Cir. 2018) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum" for standing by demonstrating: (1) an injury-in-fact; (2) fairly traceable to the challenged conduct of the defendant; and (3) likely to be redressed by a favorable judicial decision. *Spokeo*, 136 S. Ct. at 1547 (citing *Lujan*, 504 U.S. at 560-61). The existence of Article III standing often turns on the injury-in-fact element. *Spokeo*, 136 S. Ct. at 1547. Plaintiff, as the party invoking federal jurisdiction, has the burden of demonstrating each element. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

6

To establish injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal citations omitted). To be "concrete," an injury must be "real" as opposed to "abstract"; it need not be "tangible." *Id.* at 1548-49. "When one sues under a statute alleging 'the very injury [it] is intended to prevent,' and the injury 'has a close relationship to a harm . . . traditionally . . . providing a basis for a lawsuit in English or American courts,' a concrete injury has been pleaded." *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348-49 (3d Cir. 2017) (alterations in original) (quoting *In re Horizon Healthcare Srvs. Inc. Data Breach Litig.*, 846 F.3d 625, 639-40 (3d Cir. 2017)).

Separate and apart from constitutional standing, courts have recognized under the doctrine of statutory standing that the "presumption that a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (3d Cir. 2015) (quoting *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014)). The U.S. Supreme Court has noted that "[r]ead literally, the broad language [of a statute] might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III," but found it unlikely "Congress meant to allow all factually injured plaintiffs to recover." *Lexmark*, 134 S. Ct. at 1388. When considering standing under a statutorily created cause of action, the breadth of the zone of interests depends on the provisions and purposes of the statute being analyzed." *Leyse*, 804 F.3d at 324.

**B.    Rule 12(b)(6), Failure to State a Claim Upon Which Relief Can Be Granted.**

Federal Rule of Civil Procedure 8(a)(2) requires a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). While

"detailed factual allegations" are not required at this stage, Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To wit, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.*

Although the Court must accept all *factual* allegations as true, that "tenet . . . is inapplicable to legal conclusions." *Id.*  Critically, *Iqbal* requires a plaintiff provide factual allegations that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.  The claim must be more than conceivable and must instead be facially plausible. *Twombly*, 550 U.S. at 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] [] 'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

## IV.    <u>ARGUMENT.</u>

### A.    Count I Must Be Dismissed as to Pro Source Because Do-Not-Call Protections Do Not Cover Business-to-Business Calls and Plaintiff is a Serial Litigant Whose Interests are Not Within the Zone of Interests Intended to be Protected.

Plaintiff's Do-Not-Call claim under the TCPA fails for lack of statutory standing and fails to state a claim.  It is undisputed that Plaintiff held the Phone Number out to the public as a business number.  ECF No. 12 ¶ 26.  It is well-settled that Do-Not-Call protections *do not apply* to such business-to-business calls.  *See* 16 C.F.R. § 310.6(b)(7) (exempting from liability "[t]elephone calls between a telemarketer and any business").  Specifically, the Federal Trade Commission does

not consider calls made to business numbers on the NDNC to be violations of the rules implemented under the TCPA. *See Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Red. 9779, 9785 (June 17, 2008). In addition, Section 64.1200(c)(2) prohibits telephone solicitations to "[a] ***residential telephone subscriber*** who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c)(2) (emphasis added).

Thus, a consumer does *not* have standing and thus *cannot* assert a cause of action under the TCPA when the number that received the calls or texts prompting an action is not a residential phone number. *Barton v. LeadPoint Inc.*, Nos. 22-35130 and 22-35691, 2023 WL 4646103, at *1 (9th Cir. July 20, 2023). Even when a telephone number is used for both residential and business purposes, if the subscriber of a telephone number holds out such "number to the general public as a business line, the line should not be considered 'residential' for the purposes of the TCPA—even if it is registered as 'residential' with the telephone company." *See Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015); *see also Worsham v. Disc. Power, Inc.,* No. CV RDB-20-0008, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021), *amended*, No. CV RDB-20-0008, 2021 WL 1390310 (D. Md. Apr. 13, 2021) (holding that a mixed use telephone number is a business number even if it is used primarily for residential purposes).

Importantly, this Court has already held Plaintiff lacks standing to assert a TCPA claim arising out of this Phone Number because he held it out to the world as a business number and thus could not register it on the NDNC for purposes of avoiding business-to-business calls. *Shelton*, 2019 WL 1641353, at *6. While Plaintiff alleged the Phone Number was used solely for personal reasons, this Court already found Plaintiff used this number for business purposes—*i.e.*, his

9

judgment collection business called Final Verdict Solutions. *Id*. at *1.[3] This Court then held Plaintiff did not have standing to bring claims predicated on Section 227's prohibition on sales calls to numbers listed on the NDNC because business numbers are not permitted to be registered therein. *Id*. at *6. In finding Plaintiff lacked Article III standing to assert his claims, this Court observed "Plaintiff has not suffered an injury-in-fact by way of receiving business-to-business robocalls on a phone number he registered on the [NDNC]." *Id*. Critically, Plaintiff is precluded from relitigating that issue in this case as well.[4]

Similarly, in *Worsham*, the court followed *Shelton* and again dismissed Plaintiff's TCPA claims arising out of the defendant's allegedly unlawful calls to a number he registered on the NDNC. 2021 WL 50922, at *4. There, the *Worsham* court held the plaintiff could *not* register his business number with the NDNC for the purposes of avoiding business-to-business calls, and that there could be no violation of the TCPA on the basis of the calls that gave rise to his claims. 2021 WL 50922, at *4; *see also Bank*, 2015 WL 4488070, at *2 (entering summary judgment for defendant on TCPA claim because plaintiff held out the subject number to the public as a business

---

[3] Although this Court did not specify the number at issue in its *Shelton* decision, there can be no dispute that the instant dispute pertains to the Phone Number given it was the number Plaintiff referenced in his pleadings and that the defendant in that case identified in its motion to dismiss. Cialino Dec. at Exs. A, B.

[4] While this Court did permit Plaintiff's "robocall" claims under 47 U.S.C. § 227(b)(1)(A)(iii) to proceed, it dismissed Plaintiff's DNC claims for lack of standing. Plaintiff asserts DNC claims in this case and therefore he is precluded from rearguing that he has standing to bring DNC claims for his business line. Under Third Circuit law, collateral estoppel applies when: (1) the identical issue was previously adjudicated, (2) that issue was actually litigated, (3) the previous determination was necessary to the decision and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006); *see also id.* (describing the inquiry as looking to whether the party being precluded had a "full and fair opportunity" to litigate the contested issue in the previous action and whether that issue was decided by a "final and valid judgment."). Here: (1) this Court already adjudicated the question of whether the Phone Number confers standing to assert a DNC claim; (2) Plaintiff had the opportunity to brief the issue in the prior litigation and thus the question was actually litigated; (3) this Court's determination that Plaintiff used the Phone Number for business purposes meant that as a matter of law "Plaintiff has not suffered an injury-in-fact;" and (4) Plaintiff was represented by counsel, Reo Law LLC and Morrow & Artim, P.C., as reflected in the opinion.

line); *Barton*, 2023 WL 4646103, at *1 (affirming district court's dismissal of the plaintiff's TCPA claim because he only used the telephone number for litigation purposes and a reasonable observer likely would not think that he had legitimate privacy concerns regarding that number).

Moreover, at least one other Pennsylvania district court has held a serial TCPA plaintiff does not suffer an injury-in-fact when her actions remove herself from "the zone of interests intended to be protected by the TCPA." *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016). In *Stoops*, the plaintiff had at least 35 cellphones and cellphone numbers and had filed at least 11 TCPA lawsuits. *Id.* at 788. The court found the serial plaintiff's interests—which included possessing multiple cell phones and cell phone numbers with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages—are not "among the sorts of interests [the TCPA was] specifically designed to protect." *Id.* at 805 (internal citations omitted). The court went on to hold the serial plaintiff's interests were "so marginally related to or inconsistent with the purposes implicit in the [TCPA] that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (internal citations and quotations omitted).

*Stoops* further stated "[i]ndeed, it is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA as a result of its outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance." *Id.* (internal citations and quotations omitted). As such, the court held the serial plaintiff did *not* fall within the zone of interests sought to be protected by the TCPA and, thus, lacked standing—because she did not have "the sort of interest in privacy, peace, and quiet that Congress intended to protect." *Id.*

Based upon the information and confessions supplied by Plaintiff in this case, and that this Court considered in dismissing Plaintiff's claims in *Shelton*, it is indisputable Plaintiff held the

11

Phone Number out to the world as a *business* number.  Namely, the website Plaintiff maintained

for Final Verdict Solutions provided the following information regarding the Phone Number:

> If you are reading this website, you are most likely a telemarketer that has illegally called my phone.
>
> You are going to be sued.
>
> I played along with your telemarketer script in order to find out who you really are. Now I am going to sue you for violating 47 U.S.C. § 227.
>
> Have a nice day. Put **484-626-3942** on your do not call list. Send me a copy of your do not call policy and hire a really good lawyer.

Cialino Dec., Ex. B at p. 11 (emphasis added).

Plaintiff held the Phone Number out as a business number.  And this was the number Pro

Source allegedly called.  ECF No. 12 ¶ 3.  Accordingly, Plaintiff was not permitted to register the

Phone Number on the NDNC for purposes of avoiding business-to-business calls; he cannot now

assert a TCPA claim against Pro Source arising out of the calls that it allegedly placed to him.

Moreover, even if Plaintiff does allegedly use the Phone Number for both residential and business

purposes, *id.* ¶ 26, that too cannot save his claim.  *See, e.g., Bank*, 2015 WL 4488070, at *2.

Plaintiff now contends sometime after this Court's ruling in *Shelton* that the Phone Number

was a non-actionable business line, that he removed the Phone Number from the Final Verdict

Solutions website, and no longer uses it for business purposes.  But even assuming for the sake of

argument these allegations are accurate they do not change the fact this Court finally determined

Plaintiff used the Phone Number as a non-actionable business line as recently as mid-2019.  In

fact, this Court's ruling in *Shelton* also means it was improper for Plaintiff to have ***ever*** added it to

the NDNC back in 2015.  *See* ECF No. 12 ¶ 32 ("Plaintiff's telephone number has been listed on

the National Do Not Call Registry since he listed it there in 2015[.]").  And Plaintiff has not alleged

he ever *re*-registered the Phone Number thereafter.  This too undermines his DNC claims.[5]

That Plaintiff held the Phone Number out to the public as a business number is what

prompted Pro Source to allegedly contact him regarding potential financing services for his

business—something Plaintiff readily concedes.  ECF No. 12 ¶ 59 ("[a]ll the calls and text

messages were sent to attempt to sell the Plaintiff loans").  Pro Source's alleged offer to help

Plaintiff apply for a business loan demonstrates that these purported communications were directed

to Plaintiff's ***business*** use of the Phone Number—not for a residential subscriber.  In addition,

Plaintiff should not be rewarded for his all-too-familiar behavior of acting as a professional litigant

and following his formulated business model to encourage callers to call his telephone number so

he can later sue them under the TCPA.  Because Plaintiff held the Phone Number out as a business

number, he has not suffered an injury-in-fact as a result of Pro Source's alleged calls.  He thus

lacks standing to assert the claims set forth in the Amended Complaint.  Moreover, as in *Stoops*,

Plaintiff is the type of serial plaintiff that the TCPA's protections are not designed to cover—insofar

as he does not have the sort of interest in privacy, peace, and quiet Congress intended to protect.

As a result, Count I should be dismissed, with prejudice as to Pro Source.

**B.**     **Plaintiff Fails to State an Internal Do-Not-Call Claim Under Section 227(b).**

Plaintiff's claim that Pro Source violated an unspecified subsection of 47 C.F.R.

§64.1200(d) (Count II) must also fail.  Subsection 64.1200(d) of the implementing regulations of

the TCPA requires an entity to institute procedures for maintaining a list of ***residential telephone***

***subscribers*** who request not to receive telemarketing calls from the entity prior to making a call

---

[5] While Plaintiff contends it is not possible to re-register a telephone number on the NDNC, ECF No. 12 ¶ 33, he ignores the fact that his *initial* registration of the Phone Number on the NDNC in 2015 was therefore improper because—by his own admission—he was utilizing this number for business purposes at that time.

for telemarketing purposes.  *See* 47 C.F.R. § 64.1200(d).  The entity must have a written policy available upon demand, train personnel on the procedures, record the do-not-call requests and honor the requests within 30 days, identify the individual caller and any affiliated parties, and maintain a do-not-call list.  *Id*. § 64.1200(d)(1)-(6).

As an initial matter, and as set forth more fully *supra*, Plaintiff's claims in Count II are ripe for dismissal because he cannot show he is a "residential telephone subscriber."[6]  In addition, companies are permitted a reasonable amount of time—up to 30 days—to honor a person's do-not-call request.  *See* 47 C.F.R. § 64.1200(d)(3); *see also Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 130 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) ("Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.  This period may not exceed thirty days from the date of such request.").

Here, Plaintiff pleads that Pro Source contacted him on July 22, 2024, and that he requested Pro Source no longer contact him on that same day.  ECF No. 12 ¶¶ 42, 50.  After his request, Plaintiff claims he received a handful of texts—all sent within 24 hours of the alleged stop request.  *Id*. ¶¶ 51-58.  Thus, even if these calls were made and texts were sent after Plaintiff's requested no further contact, they were still placed within 24 hours of said request—well within the permitted time for entities to honor such requests.  Thus, Plaintiff's internal do-not-call claim fails as a matter of law because Pro Source had up to 30 days to honor any such request.[7]

---

[6] While Plaintiff contends, in conclusory fashion, that he purportedly reached a "settlement" with Pro Source in 2021 "for calls nearly identical to the ones at issue here placed to the telephone number at issue here," (ECF No. 12 ¶ 37), this is irrelevant.  Such allegations cannot give rise to a claim under 47 C.F.R. § 64.1200(d).  Because Plaintiff admits he used the Phone Number for business purposes, this also disqualifies him from arguing he falls within the scope of a "residential telephone subscriber."

[7] Effective April 11, 2025, the FCC will "amend [its] rules to require that callers honor company-specific do-not-call and revocation-of-consent requests within a reasonable time from the date that the request is

Separately, Plaintiff's internal do-not-call claim fails because it merely recites the various subsections of § 64.1200(d) in the factual background section and does not supply an explanation as to **how** Pro Source allegedly violated one or more of these subsections. As stated in *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 556 U.S., at 663. A pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Here, Plaintiff alleges "[t]he foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA," *see* ECF No. 12 ¶ 81, but does **not** provide any support indicating Pro Source does not have procedures for an internal do-not-call list. Additionally, to the extent Plaintiff is contending Pro Source does not have a written policy, he would have no way of knowing—given that he failed to plead any information to suggest he made a demand for a copy of same. Plaintiff's recital of the requirements of § 64.1200 does no more than make the unadorned, the-defendant-unlawfully-harmed-me accusation *Iqbal* warned against. Since Plaintiff offers no more than statutory language for his claim in Count II, it must fail as a matter of law.

---

made, not to exceed 10 business days after receipt of the request." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order and Further Notice of Proposed Rulemaking, CG Docket No. 02-278, 2024 WL 668031 (Feb. 15, 2024), at ¶ 19 (*available at* https://docs.fcc.gov/public/attachments/FCC-24-24A1.pdf). In its original notice of proposed rulemaking, the FCC proposal would have required callers to honor company-specific DNC requests within 24-hours. However, in its order, the FCC "revise[d] our proposed 24-hour timeframe" because it was "persuaded by the record, including comments from consumer organizations, that a longer timeframe is justified to ensure that entities, including smaller entities, have a reasonable opportunity to process do-not-call and revocation requests." *Id.* ¶ 21. Here, the calls which Plaintiff alleges not only fall within the current 30-day time (and the pending 10-business day timeframe), but also fall within the 24-hour period the FCC felt was too short. In other words, there can be no factual dispute that the calls were non-actionable and that Pro Source honored Plaintiff's request within a reasonable time.

170591.00002/152165861v.1

## V.    <u>CONCLUSION</u>

For the reasons stated, Plaintiff lacks standing to assert the claims in his *Amended Complaint.* Separately, because of Plaintiff's fundamental, incurable pleading deficiencies, he has also failed to state a viable TCPA claim, and his *Amended Complaint* should be dismissed with prejudice as to Pro Source.

Respectfully submitted,

Dated: January 6, 2025

*/s/Thomas P. Cialino*
**BLANK ROME LLP**
Jeffrey N. Rosenthal
Thomas P. Cialino
One Logan Sq., 130 N. 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5553
Fax: (215) 832-5553
jeffrey.rosenthal@blankrome.com
thomas.cialino@blankrome.com
*Attorneys for Defendant, Pro Source Lending Group LLC, d/b/a Fast Fund Group, d/b/a Fast Funds Group*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas Cialino, hereby certify that on January 6, 2025, a true and correct copy of the foregoing document was served upon the following individuals via this Court's electronic filing system or via electronic mail:

Andrew Roman Perrong
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
*Counsel for Plaintiff*

Brittney Wilson
1121 22nd Street
West Palm Beach, FL 33407
*Defendant*


*/s/ Thomas P. Cialino*
Thomas P. Cialino

170591.00002/152165861v.1