**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| James E. Shelton, individually and on behalf of all others similarly situated,<br><br>                           Plaintiff,<br><br>     v.<br><br>Pro Source Lending Group LLC, d/b/a Fast Fund Group, d/b/a Fast Funds Group, *et al.*,<br><br>                         Defendants. | Civil Action No.: 2:24-cv-04394-GAM |

**DECLARATION OF THOMAS CIALINO IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED CLASS ACTION COMPLAINT**

I, Thomas Cialino, declare and state as follows:

1. I am a member of the Bars of the Commonwealth of Pennsylvania and the State of New Jersey, and I am an attorney with the law firm Blank Rome LLP.

2. I am over 18 and have personal knowledge of the following information and could competently testify to the same.

3. I serve as counsel to Defendant Pro Source Lending Group LLC, d/b/a Fast Fund Group, d/b/a Fast Funds Group ("Pro Source") in the above-captioned case.

4. I make this declaration in support of Pro Source's Motion to Dismiss Plaintiff's First Amended Class Action Complaint.

5. On September 5, 2024, counsel for Plaintiff, James E. Shelton ("Plaintiff"), sent an email to my colleague, Jeffrey Rosenthal, responding to a question about the complete telephone number that gave rise to Plaintiff's claims in this matter. Plaintiff's counsel stated that "Mr. Shelton's full number on which he received the calls is (484) 626-3942."

6.      Attached collectively hereto as **Exhibit A** are copies of the Complaint and the First Amended Complaint that Plaintiff filed with this Court in the case captioned as *Shelton v. Target Advance LLC* and docketed at Case No. 2:18-cv-02070-NIQA (the "<u>Target Advance Action</u>").

7.      Attached hereto as **Exhibit B** is a copy of the Motion to Dismiss Plaintiffs' Complaint that the defendant filed in the Target Advance Action.

8.      Attached hereto as **Exhibit C** is a copy of the notice that Plaintiff filed with this Court on July 2, 2018, in a prior action that was captioned *Shelton v. Capital Advances LLC*, *et al.* and docketed at Case No. 2:18-cv-02186.  In this notice, Plaintiff supplied a list of 29 cases that he filed where he sought relief under the Telephone Consumer Protection Act.

9.      I hereby further declare that all statements made herein are of my own knowledge and are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001.

Executed this 6th day of January, 2025 in Philadelphia, Pennsylvania.

<u>/s/*Thomas P. Cialino*</u>
Thomas P. Cialino

# EXHIBIT A



**James Everett Shelton**
**316 Covered Bridge Road**
**King of Prussia, PA 19406**
**(484) 626-3942**
**jeshelton595@gmail.com**

**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES EVERETT SHELTON** ) | |
| **316 Covered Bridge Road** ) | |
| **King of Prussia, PA 19406** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action** |
| ) | |
| **vs.** ) | **No.    1 8    2 0 7 0** |
| ) | |
| **TARGET ADVANCE LLC** ) | |
| **4207 Avenue M,** ) | |
| **Brooklyn, New York 11234** ) | |
| ) | |
| **Defendants** ) | **Jury Trial Demanded** |

## COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory

damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47

U.S.C. 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing

tortious activity of TARGET ADVANCE LLC, in negligently and/or willfully contacting

Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") utilizing an automatic telephone

dialing system ("ATDS calls" or "RoboCalls") in violation of the Telephone Consumer

Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or

controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

## I.        Introduction

1

1. Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2. Plaintiff brings this action to challenge Target Advance's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Target Advance's and Target Advance's agents' illegal telephone solicitations by which it markets its products and services through its robocalls, and Target Advance's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

3. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

4. The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

5. Plaintiff alleges that Defendant Target Advance LLC ("Target Advance") placed multiple robocalls to Plaintiff's cellular telephone number for the purposes of advertising Target Advance's services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

6. Plaintiff never consented to receive any of these calls.

7. All of the claims asserted herein arise out of Target Advance's illegal telephone solicitation campaign and are a common fact pattern.

## II. Jurisdiction and Venue

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County. Plaintiff received the phone calls to his private mobile telephone number as a permanent resident of Montgomery County. Defendant Target Advance conducts business in this judicial district by calling Pennsylvania consumers. Plaintiff's telephone number has a (484) Pennsylvania area code and is registered to Plaintiff's home address. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent...; it occurred when the [facsimile] was received."

## III. Parties

10. Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

11. Defendant TARGET ADVANCE LLC ("Target Advance") is a New York corporation with a registered principal address of 4203 Avenue M, Brooklyn, New York, 11234, which transacts business in, *inter alia*, Montgomery County, Pennsylvania. Upon information and belief, Target Advance's current address is actually 4207 Avenue M, Brooklyn, New York, 11234. Target Advance is not registered to do business in the Commonwealth of Pennsylvania,

3

however, Target Advance markets and sells, *inter alia*, business loan and/or merchant cash advance services to people in Pennsylvania.

## Background

## The Telephone Consumer Protection Act

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

14.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

15.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

4

Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## IV.    **Factual Allegations**

16.    Target Advance provides business loans and/or "merchant cash advance" services.

17.    Target Advance uses telemarketing to promote its services.

18.    Target Advance's telemarketing efforts also include the use of "automatic telephone dialing systems" or "robocalls" to transmit a message, as prohibited by 47 U.S.C. § 227(b)(1)(B).

19.    At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

20.    Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to the calls.

5

21. On January 17, 2018 at 11:14 AM, Plaintiff received a call from 484-588-6273 to his cellular telephone number, 484-626-3942.

22. Plaintiff did not recognize the caller ID, so he did not answer.

23. On January 17, 2018 at 11:32 AM, Plaintiff tried to call the number back, but received no answer. Plaintiff then tried to call back once again at 11:32 AM, however, he could not identify who had called him.

24. On January 22, 2018 at 1:38 PM, Plaintiff received another call from 484-588-6273. Once again, Plaintiff did not answer.

25. Plaintiff thought the caller might be someone local or in the Philadelphia region, since they were using a (484) local area code.

26. However, Plaintiff was incorrect. Defendants were utilizing their robodialer to employ "caller ID spoofing" to display false or fake caller ID, to make Plaintiff think it was a local number calling.

27. On January 22, 2018 at 2:47 PM, Plaintiff called back the number which called him, 484-588-6273. After a brief pause, Plaintiff heard a balloon-popping sound and a machine noise; he was then connected with a live human being, "Brad", at Target Advance.

28. Plaintiff then received a scripted sales pitch about business loans and/or merchant cash advance services.

29. As a result of this conversation, "Brad Cozzi", a senior consultant at Target Advance, sent Plaintiff an e-mail from brad@targetadvance.com.

30. During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with

6

their company information. However, Plaintiff never consented to receiving any additional telemarketing calls. In fact, Plaintiff asked not to be called back.

31.    As a point of fact, to the extent that "consent" was supplied during the call, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call.

32.    Despite not giving Target Advance consent or permission (verbally or in writing) to call back, Plaintiff received another call from the same caller ID 484-588-6273 the following day, January 23, 2018 at 3:32 PM. Plaintiff did not answer.

33.    Plaintiff received another missed call from the same number on January 24, 2018 at 1:28 PM.

34.    On January 25, 2018 at 12:29 AM, Plaintiff received another call from 484-588-6273. Plaintiff answered and said "hello" into his phone repeatedly, heard a machine noise, then heard dead air, and the call was disconnected.

35.    On February 20, 2018 at 11:56 AM, Plaintiff received another call from 484-588-6273. The call hung up prior to Plaintiff having a chance to answer it.

36.    On February 20, 2018 at 11:56 AM, within a few seconds, Plaintiff received another call from 484-588-6273. Plaintiff answered but the call immediately disconnected after 1 second. Such behavior is characteristic of an automatic dialer, and is termed illegal call abandonment.

7

Often, such automatic dialers, either because they misidentify the caller as no voice on the line, or because there are not enough agents available to answer the call, will "abandon" the call.

37. At no time did Plaintiff provide his consent to receive any calls from Target Advance and/or its agents.

38. Prior to these unsolicited calls, the Plaintiff has never done any business with Target Advance and Plaintiff never provided Target Advance with his cellular telephone number.

39. Target Advance did not have the Plaintiff's prior express written consent to make these calls.

40. In fact, before filing this lawsuit, the Plaintiff wrote to Target Advance on April 18, 2018 asking if they had his prior express written consent to make the calls, but Target Advance did not provide any evidence of consent.

41. Plaintiff also requested in his e-mail to have his number placed on Target Advance 's internal Do-Not-Call list, and requested to receive a copy of Target Advance 's internal company Do-Not-Call policy.

42. Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite two a written e-mail request and notice of Plaintiff's intent to file a formal claim.

43. Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

44. Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

45. To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that

8

such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Target Advance inquiring about the calls before filing this lawsuit.

46.    Additionally, to the extent Plaintiff seeks to recover damages for these violations, see Charvat v. NMP, LLC, in which the Sixth Circuit Court of Appeals held that it is possible to allege violations of BOTH subsections of 47 USC § 227(b) [robocalls] and 47 USC § 227(c) [other violations], allowing for multiple violations per call. See also, Lary v. Trinity Physician Fin. & Ins. Servs., in which the 11th Circuit, under 6th Circuit guidance in the Charvat cases, found that it is possible, beyond alleging multiple violations per call based on overall subsection (as in the Charvat case), to allege multiple violations within each subsection, such as the failure to place a number on an internal DNC or provide a copy of a do-not-call policy (both of which are violations of 47 CFR 64.1200(d)(1) and (d)(3), and 47 USC § 227(c) [ie. Subsection C]).

47.    Plaintiff is using an identical method of calculating damages under the TCPA to that of multiple Judges in this Court, including District Judge Legrome D. Davis of the United States District Court for the Eastern District of Pennsylvania, in the case of Shelton v. Doan Solutions, LLC 2:17-cv-02368 (Doc. 5). In his opinion determining damages in a default judgment motion, Judge Davis found, under Sixth and Eleventh Circuit guidance, that the TCPA's "Do-Not-Call

9

List" provision and "Do-Not-Call Policy" provisions were implied as causes of action under 47 CFR 64.1200, et. seq. and that the procedural violations of failing to put Plaintiff on Defendant's do-not-call list or provide Plaintiff a copy of Defendant's do-not-call policy were separate procedural violations of 47 C.F.R 64.1200(d)(1) and (d)(3), actionable under 47 U.S.C §227(c), in addition to violations of 47 U.S.C § 227(b)(1)(A) and 47 U.S.C § 227(c)(3)(F).

48.    In *Andrew Perrong v. Tranzvia LLC*, No. 2:17-cv-03664, District Judge Joel H. Slomsky of the United States District Court for the Eastern District of Pennsylvania also ruled, after hearing and good cause shown, that the TCPA's "Do-Not-Call List" provision and "Do-Not-Call Policy" provisions were implied as causes of action under 47 CFR 64.1200, et. seq. and that the procedural violations of failing to put Plaintiff on Defendant's do-not-call list or provide Plaintiff a copy of Defendant's do-not-call policy were separate procedural violations of 47 C.F.R 64.1200(d)(1) and (d)(3), actionable under 47 U.S.C §227(c), in addition to violations of 47 U.S.C § 227(b)(1)(A) and 47 U.S.C § 227(c)(3)(F). Judge Slomsky awarded the plaintiff treble damages of $1,500 for each instance of "failure to provide a copy of defendant's Do-Not-Call policy" and $1,500 for each instance of "failure to put plaintiff's number on defendant's Do-Not-Call list", for a total judgment award of $45,000.

49.    Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

50.    Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes.

51.    These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

10

52.     Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

53.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

54.     As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

55.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

56.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

57.     As a result of Defendants' and Defendants' agents knowing and/or willful violations

11

of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

58.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

59.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

60.    As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

61.    Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

62.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

63.    As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

12

64. Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

## Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

65. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

66. As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

67. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

68. As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

69. Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

70. As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR

13

64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## **Eighth Cause of Action**

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

71.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

72.    As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## **WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:**
## V.    **Prayer for Relief**

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8.

2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing; Total statutory damages: **$30,000** (Seven counts each of: "ATDS Call", "Sales call to a number registered on the National Do-Not-Call Registry", five counts of "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list", and one count of "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;

5. Costs of suit herein incurred; and

14

6. All such other and further relief as the Court deems proper.

## VI. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 17, 2018

James E. Shelton

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

15

## **VERIFICATION**

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: May 17, 2018

*James E. Shelton*

JAMES EVERETT SHELTON

16

James Everett Shelton
316 Covered Bridge Road
King of Prussia, PA 19406
(484) 626-3942
jeshelton595@gmail.com

**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FILED**

**SEP 24 2018**

KATE BARKMAN, Clerk
By_____Dep. Clerk

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | ) | |
| **316 Covered Bridge Road** | ) | |
| **King of Prussia, PA 19406** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action** |
| | ) | |
| **vs.** | ) | **No. 2:18-cv-02070-NIQA** |
| | ) | |
| **TARGET ADVANCE LLC** | ) | |
| **250 Avenue X, Second Floor** | ) | |
| **Brooklyn, NY 11223** | ) | |
| | ) | |
| **Defendants** | ) | **Jury Trial Demanded** |

## FIRST AMENDED COMPLAINT:

Plaintiff JAMES EVERETT SHELTON brings this action for damages, statutory

damages, court costs, and injunctive relief under rights pursuant to Federal Statute under 47

U.S.C. § 227, and 47 C.F.R. 64 for the *ultra vires* illegal actions and deliberate and knowing

tortious activity of TARGET ADVANCE LLC, in negligently and/or willfully contacting

Plaintiff via Plaintiff's telephone to solicit sales ("Sales Calls") utilizing an automatic telephone

dialing system ("ATDS calls" or "RoboCalls") in violation of the Telephone Consumer

Protection Act, 47 U.S.C. § 227 *et seq.* and related claims that form part of the same claim or

controversy. Plaintiff demands a trial by jury, and complains and alleges as follows:

### I.     **Introduction**

1

**1.** Plaintiff James Everett Shelton ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

**2.** Plaintiff brings this action to challenge Target Advance's practices in the telephone solicitation of its products and services. Specifically, Plaintiff challenges Target Advance's and Target Advance's agents' illegal telephone solicitations by which it markets its products and services through its robocalls, and Target Advance's failure to maintain a Do-Not-Call list or Do-Not-Call policy.

**3.** "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communication Commission.[1]

**4.** The TCPA is designed to protect consumer privacy by prohibiting unsolicited telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

**5.** Plaintiff alleges that Defendant Target Advance LLC ("Target Advance") placed multiple robocalls to Plaintiff's cellular telephone number for the purposes of advertising Target Advance's services, using an automatic telephone dialing system (ATDS), which is prohibited by the TCPA.

**6.** Several of these calls were made after Plaintiff told Target Advance to stop calling, and after Plaintiff had sued and served the Defendant with the summons and original complaint.

**7.** Plaintiff never consented to receive any of these calls.

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶ (July 10, 2015)

**8.** All of the claims asserted herein arise out of Target Advance's illegal telephone solicitation campaign and are a common fact pattern.

## II.    Jurisdiction and Venue

**9.** This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

**10.** Venue is proper in this court in that Defendants conduct business in, and a substantial part of the events giving rise to plaintiff's claims occurred in, Pennsylvania's Montgomery County. Plaintiff received the phone calls to his private mobile telephone number as a permanent resident of Montgomery County. Defendant Target Advance conducts business in this judicial district by calling Pennsylvania consumers. Plaintiff's telephone number has a (484) Pennsylvania area code and is registered to Plaintiff's home address. Each of the Defendants has sufficient minimum contacts with this county, and otherwise purposely avail themselves of the markets in this county. Also, see *Lary V. The Doctors Answer, LLC* CV-12-S-3510-NE (N.D. Ala. March 8, 2013.), a Federal Telephone Consumer Protection Act case, which held that "venue is proper in the district where [plaintiff] resides because the injury did not occur when the facsimile was sent...; it occurred when the [facsimile] was received."

## III.    Parties

**11.** Plaintiff JAMES EVERETT SHELTON ("Plaintiff") is an individual who received the alleged phone calls on his private mobile telephone line mentioned herein. Plaintiff is an adult individual and citizen of the Commonwealth of Pennsylvania who has a residence of 316 Covered Bridge Road, King of Prussia, PA 19406.

**12.** Defendant TARGET ADVANCE LLC ("Target Advance") is a New York corporation with a registered principal address of 4203 Avenue M, Brooklyn, New York, 11234, which transacts business in, *inter alia*, Montgomery County, Pennsylvania. Upon information and

3

belief, Target Advance's current address is actually 250 Avenue X, Second Floor, Brooklyn, New York 11223. Target Advance is not registered to do business in the Commonwealth of Pennsylvania, however, Target Advance markets and sells, *inter alia*, merchant cash advance and/or business loan services to people in Pennsylvania.

## Background
## The Telephone Consumer Protection Act

13. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The National Do-Not-Call Registry

14. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

15. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R.

§ 64.1200(c)(2).

### The TCPA Prohibits Automated Telemarketing Calls

16. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express written consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA

4

provides for a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

17.    According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

18.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003). In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

5

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*

27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

## Factual Allegations

**19.** Target Advance provides business loans and/or "merchant cash advance" services.

**20.** A "merchant cash advance" is a form of alternative lending or "factoring".

**21.** Merchant cash advance brokers market their products and services as a way for people to get short-term working capital. In exchange for a one-time cash advance, the borrower pledges a percentage of its future receivables to the lender.

**22.** Target Advance uses telemarketing to promote its services.

**23.** Target Advance's telemarketing efforts also include the use of "automatic telephone dialing systems" or "robocalls" to transmit a message, as prohibited by 47 U.S.C. § 227(b)(1)(B).

**24.** At all times material hereto, Plaintiff was the subscriber of the telephone number 484-626-3942 and paid his cell phone bill through T-Mobile.

**25.** Plaintiff's personal cellular telephone number, 484-626-3942, has been successfully registered on the National Do-Not-Call Registry since June 26, 2015, more than 31 days prior to the calls.

**26.** On January 17, 2018 at 11:14 AM, Plaintiff received a call which displayed on his caller identification as 484-588-6273 to his cellular telephone number, 484-626-3942.

**27.** Plaintiff did not recognize the caller ID, so he did not answer.

**28.** On January 17, 2018 at 11:32 AM, Plaintiff tried to call the number back, but received no answer. Plaintiff then tried to call back once again at 11:32 AM, however, he could not identify who had called him.

6

**29.** On January 22, 2018 at 1:38 PM, Plaintiff received another call from 484-588-6273. Once again, Plaintiff did not answer.

**30.** Plaintiff thought the caller might be someone local or in the Philadelphia region, since they were using a (484) local area code.

**31.** However, Plaintiff was incorrect. Defendants were utilizing an autodialer to employ "caller ID spoofing" to display false or fake caller ID, to make Plaintiff think it was a local number calling.

**32.** On January 22, 2018 at 2:47 PM, Plaintiff called back the number which called him, 484-588-6273. After a brief pause, Plaintiff heard a balloon-popping sound and a machine noise; he was then connected with a live human being, "Brad", at Target Advance.

**33.** Plaintiff then received a scripted sales pitch about business loans and/or merchant cash advance services.

**34.** As a result of this conversation, "Brad Cozzi", a senior consultant at Target Advance, sent Plaintiff an e-mail from brad@targetadvance.com.

**35.** During that call, Plaintiff took steps to ascertain the identity of the caller and feigned interest for this exact reason, namely by requesting that the caller send Plaintiff an e-mail with their company information. However, Plaintiff never consented to receiving any additional telemarketing calls. In fact, Plaintiff asked not to be called back, and said he would call Target Advance back if he was interested.

**36.** As a point of fact, to the extent that "consent" was supplied during the call, that was done in order to discover the identity of the caller and for no other reason. Courts have held this to be legitimate and have not held such "consent" to be detrimental to a plaintiff bringing a TCPA action. *See* for instance, Bank v. Caribbean Cruise Line, which held that "Purporting to obtain

7

consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call.... As the FCC has stated, the consent must be made before the call.

**37.** Despite not giving Target Advance consent or permission (verbally or in writing) to call back, Plaintiff received another call from the same caller ID 484-588-6273 the following day, January 23, 2018 at 3:32 PM. Plaintiff did not answer.

**38.** Plaintiff received another missed call from the same number, 484-588-6273, on January 24, 2018 at 1:28 PM.

**39.** On January 25, 2018 at 12:29 AM, Plaintiff received another call from 484-588-6273. Plaintiff answered and said "hello" into his phone repeatedly, heard a machine noise, then heard dead air, and the call was disconnected.

**40.** On February 20, 2018 at 11:56 AM, Plaintiff received another call from 484-588-6273. The call hung up before Plaintiff had the chance to answer.

**41.** On February 20, 2018 at 11:56 AM, within a few seconds, Plaintiff received another call from 484-588-6273. Plaintiff answered but the call immediately disconnected after 1 second. Such behavior is characteristic of an automatic dialer, and is termed illegal call abandonment. Often, such automatic dialers, either because they misidentify the caller as no voice on the line, or because there are not enough agents available to answer the call, will "abandon" the call.

**42.** Target Advance did not have the Plaintiff's prior express written consent to make these calls.

8

**43.** In fact, before filing this lawsuit, the Plaintiff wrote to Target Advance on April 18, 2018 asking if they had his prior express written consent to make the calls, but Target Advance did not provide any evidence of consent.

**44.** Plaintiff also requested in his e-mail to have his number placed on Target Advance 's internal Do-Not-Call list, and requested to receive a copy of Target Advance 's internal company Do-Not-Call policy.

**45.** Defendants failed and/or refused to provide a written copy of their internal company Do-Not-Call policy to Plaintiff, despite two a written e-mail request and notice of Plaintiff's intent to file a formal claim.

**46.** Pursuant to 47 CFR 64.1200(d)(1), a telemarketer is required, upon request, to send a consumer a written copy of their company Do-Not-Call Policy.

**47.** Defendants failed and/or refused to put Plaintiff's number on their internal company Do-Not-Call list.

**48.** On May 17, 2018, Plaintiff filed a Complaint in this Court against the Defendants. Defendants were served with the Complaint (again) on August 24, 2018.

**49.** Despite being on notice that Plaintiff did not want to receive any telemarketing calls, and that Plaintiff was suing the Defendants for illegal telemarketing, on August 29, 2018 at 10:22 AM, Plaintiff received a call which displayed on his caller identification as 646-376-3591.

**50.** Plaintiff does not believe this particular call was made using an autodialer, because it was a live sales call without any automated characteristics.

**51.** Plaintiff answered and received a scripted sales pitch about business funding from Elijah "Eli" Gonzalez, who identified himself as a representative of Target Advance.

9

**52.** For the sole purpose of identifying the company responsible for the telemarketing call, Plaintiff pretended to be interested in funding and received an e-mail from Elijah Gonzalez, elijah@targetadvance.com.

**53.** After Plaintiff received the e-mail, while still on the phone with Elijah Gonzalez, Plaintiff reminded Mr. Gonzalez that he was currently suing Target Advance for illegal telemarketing.

**54.** Plaintiff demanded an explanation for why Target Advance was still calling him, despite the fact that Plaintiff had told Target Advance to stop calling and despite the fact that Plaintiff had gone to the length of filing the instant lawsuit against Target Advance.

**55.** Plaintiff asked not to receive any more calls from Target Advance. Mr. Gonzalez apologized for making the sales call and promised Plaintiff he would not call Plaintiff again.

**56.** Mr. Gonzalez explained that Target Advance obtained its data from a lead generation company, and that Target Advance uses an "automatic system" to dial numbers for sales purposes.

**57.** Despite his assurances that Plaintiff would not be called again, Plaintiff received two (2) more automated calls from Target Advance, using the spoofed caller identification 484-588-6273, on August 29, 2018 at 11:03 AM and 11:04 AM.

**58.** These calls were made using automated dialing technology. These two calls happened within seconds of one another, which is an incredibly short amount of time to receive a call back. Plaintiff attempted to answer both calls but before he could do so, the phone calls disconnected and appeared in Plaintiff's call log as "missed calls". Such behavior is characteristic of an automatic dialer, and is termed illegal call abandonment. Often, such automatic dialers, either because there are not enough agents available to answer the call, or due to technical malfunction, will "abandon" the call before the recipient even has the chance to answer.

**59.** At no time did Plaintiff provide his consent to receive any calls from Target Advance and/or its agents.

**60.** Prior to these unsolicited calls, the Plaintiff has never done any business with Target Advance and Plaintiff never provided Target Advance with his cellular telephone number.

**61.** To the extent Defendants contend that they obtained consent or agreement from Plaintiff for the calls at issue here, the Telemarketing Sales Rule, 16 C.F.R. § 310.5(a)(5), requires that such records be maintained. In any event, consent is an affirmative defense under the TCPA, this defense is unavailable unless Defendants can show that they had prior express consent in writing, and that they have otherwise complied with all of the requirements of 47 C.F.R. § 64.1200(c)(2), including maintaining written procedures on national do-not-call rules, training personnel on national do-not-call rules, maintaining an internal do-not-call list, and accessing the national do-not-call database no more than 31 days prior to making any calls, and maintaining records documenting such access. Defendants did not have prior express written consent to such calls from Plaintiff, and did not produce any such written consent, even though the Plaintiff contacted Target Advance inquiring about the calls before filing this lawsuit.

**62.** Additionally, to the extent Plaintiff seeks to recover damages for these violations, see Charvat v. NMP, LLC, in which the Sixth Circuit Court of Appeals held that it is possible to allege violations of BOTH subsections of 47 USC § 227(b) [robocalls] and 47 USC § 227(c) [other violations], allowing for multiple violations per call. See also, Lary v. Trinity Physician Fin. & Ins. Servs., in which the 11th Circuit, under 6th Circuit guidance in the Charvat cases, found that it is possible, beyond alleging multiple violations per call based on overall subsection (as in the Charvat case), to allege multiple violations within each subsection, such as the failure

11

to place a number on an internal DNC or provide a copy of a do-not-call policy (both of which are violations of 47 CFR 64.1200(d)(1) and (d)(3), and 47 USC § 227(c) [ie. Subsection C]).

**63.** Plaintiff is using an identical method of calculating damages under the TCPA to that of multiple Judges in this Court, including District Judge Legrome D. Davis of the United States District Court for the Eastern District of Pennsylvania, in the case of Shelton v. Doan Solutions, LLC 2:17-cv-02368 (Doc. 5). In his opinion determining damages in a default judgment motion, Judge Davis found, under Sixth and Eleventh Circuit guidance, that the TCPA's "Do-Not-Call List" provision and "Do-Not-Call Policy" provisions were implied as causes of action under 47 CFR 64.1200, et. seq. and that the procedural violations of failing to put Plaintiff on Defendant's do-not-call list or provide Plaintiff a copy of Defendant's do-not-call policy were separate procedural violations of 47 C.F.R 64.1200(d)(1) and (d)(3), actionable under 47 U.S.C §227(c), in addition to violations of 47 U.S.C § 227(b)(1)(A) and 47 U.S.C § 227(c)(3)(F).

**64.** In *Andrew Perrong v. Tranzvia LLC*, No. 2:17-cv-03664, District Judge Joel H. Slomsky of the United States District Court for the Eastern District of Pennsylvania also ruled, after hearing and good cause shown, that the TCPA's "Do-Not-Call List" provision and "Do-Not-Call Policy" provisions were implied as causes of action under 47 CFR 64.1200, et. seq. and that the procedural violations of failing to put Plaintiff on Defendant's do-not-call list or provide Plaintiff a copy of Defendant's do-not-call policy were separate procedural violations of 47 C.F.R 64.1200(d)(1) and (d)(3), actionable under 47 U.S.C §227(c), in addition to violations of 47 U.S.C § 227(b)(1)(A) and 47 U.S.C § 227(c)(3)(F). Judge Slomsky awarded the plaintiff treble damages of $1,500 for each instance of "failure to provide a copy of defendant's Do-Not-Call policy" and $1,500 for each instance of "failure to put plaintiff's number on defendant's Do-Not-Call list", for a total judgment award of $45,000.

12

**65.** Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

**66.** Plaintiff received the calls on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with T-Mobile as a cellular telephone number and is used for personal purposes, and is a residential telephone. **67.** These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

**68.** Plaintiff was harmed by these calls. Plaintiff was temporarily deprived of legitimate use of his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

**69.** The following is a spreadsheet detailing the telemarketing calls Plaintiff received from Target Advance.

| Calls to Plaintiff's Cell Phone (484) 626-3942 | | | | |
|---|---|---|---|---|
| **Date:** | **Time:** | **Caller ID:** | **Notes:** | **ATDS Used?** |
| 1/17/2018 | 11:14 AM | 484-588-6273 | Missed Call | Yes |
| 1/22/2018 | 1:38 PM | 484-588-6273 | Missed Call | Yes |
| 1/23/2018 | 3:32 PM | 484-588-6273 | Missed Call | Yes |
| 1/24/2018 | 1:28 PM | 484-588-6273 | Missed Call | Yes |
| 1/25/2018 | 12:29 PM | 484-588-6273 | ATDS call | Yes |
| 2/20/2018 | 11:56 AM | 484-588-6273 | Missed Call | Yes |

| 2/20/2018 | 11:56 AM | 484-588-6273 | ATDS call, which abandoned after 1 second | Yes |
| 8/29/2018 | 10:22 AM | 646-376-3591 | Spoke with Elijah Gonzalez | No |
| 8/29/2018 | 11:03 AM | 484-588-6273 | Missed Call | Yes |
| 8/29/2018 | 11:04 AM | 484-588-6273 | Missed Call | Yes |

## Causes Of Action

### First Cause of Action

(Negligent Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

**70.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**71.** As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

**72.** Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA "ATDS" Prohibition, 47 U.S.C. § 227 et seq.)

**73.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**74.** As a result of Defendants' and Defendants' agents knowing and/or willful violations

14

of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

**75.**     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**76.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**77.**     As a result of Defendants' and Defendants' agents negligent violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

**78.**     Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

**79.**     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**80.**     As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for himself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

15

**81.** Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fifth Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**82.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**83.** As a result of Defendants' and Defendants` agents' negligent violations of 47 CFR 64.1200(d)(1), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

### Sixth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call Policy" Requirement, 47 CFR 64.1200 et seq.)

**84.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**85.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(1) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

### Seventh Cause of Action

(Negligent Violation of the TCPA "Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**86.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**87.** As a result of Defendants' and Defendants' agents' negligent violations of 47 CFR

64.1200(d)(3), Plaintiff seeks for himself $500 in statutory damages for each and every violation, pursuant to the implied private right of action.

## Eighth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Do-Not-Call List" Requirement, 47 CFR 64.1200 et seq.)

**88.** Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

**89.** As a result of Defendants' and Defendants' agents knowing and/or willful violations of 47 CFR 64.1200(d)(3) Plaintiff seeks for himself treble damages, as implied, up to $1,500.00 for each and every violation, pursuant to the implied private right of action.

## WHEREFORE, Plaintiff prays for relief against defendants, and each of them, as follows:
### IV. Prayer for Relief

On Causes of Action 1-8:

1. For awards of $500 for each negligent violation as set forth in actions 1-8.

2. For awards of $1,500 for each knowing and/or willful violation as set forth in actions 1-8.

3. Injunctive relief against Defendants, and each of them, to prevent future wrongdoing; Total statutory damages: **$34,500** (Ten counts each of: "ATDS Call", Nine Counts of "Sales call to a number registered on the National Do-Not-Call Registry", three (3) counts of "Failure to Put Plaintiff's Number on Defendants' Do-Not-Call list", and one (1) count of "Failure to provide a copy of Defendant's Do-Not-Call Policy", with treble damages for each.)

4. Prejudgment interest at the maximum legal rate;

5. Costs of suit herein incurred; and

17

6. All such other and further relief as the Court deems proper.

## V.    Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: September 20, 2018

*James E Shelton*

James Everett Shelton
*Plaintiff, Pro Se*
316 Covered Bridge Road
King of Prussia, PA 19406
Phone: 484-626-3942
Jeshelton595@gmail.com

## VERIFICATION

I, JAMES EVERETT SHELTON, Plaintiff, Pro Se, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 PA. C.S. § 4904 related to unsworn falsification to authorities.

Dated: September 20, 2018

James E Shelton

JAMES EVERETT SHELTON

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2018, I served a copy of Plaintiff's Amended Complaint via U.S. Mail to:

Norman M. Valz, Esq.
205 Arch St - 2nd Floor
Philadelphia, PA 19106

*/s/ James Everett Shelton*
James Everett Shelton

# EXHIBIT B

**JAMES EVERETT SHELTON**
      Plaintiff

-against-

                                    Civil Action No. 2:18-cv-02070-NIQA

**TARGET ADVANCE, LLC**
      Defendants

_____

**DEFENDANT TARGET ADVANCE, LLC's MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO
RULES 12(b)1 and 12(b)6**
_____

By: Norman M. Valz, Esq.– Attorney for Movant
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT…………………………………………………………1

II.  STANDARD OF REVIEW ...............................................................................................3

    A. Federal Rule of Civil Procedure 12(b)(1) ................................................................ 3
    B. Federal Rule of Civil Procedure 12(b)(6) .................................................................4

III.  ARGUMENT ...................................................................................................................... 4

    A. Shelton Lacks Constitutional Standing Because He Has Suffered No
        Concrete Injury .........................................................................................................4
    B. Shelton Fails to State a Claim Because He Is Outside the "Zone of Interest"
        of Statute……………………………………………………………………….. 11

    CONCLUSION…………………………………………………………………….…16

i

# TABLE OF AUTHORITIES

CASES                                                                PAGE

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................4

*Ballentine v. United States*,
   486 F.3d 806 (3d Cir. 2007)..........................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570 (2007)…………………………………………………………………4

*Constitution Party of Pa. v. Aichele*,
   757 F.3d 347 (3d Cir. 2014)..........................................................................................3

*Davis v. Fed. Election Comm'n*,
   554 U.S. 724, 734 (2008)…………………………………………………………………4

*Doe v. Nat'l Bd. of Med. Examiners*,
   199 F.3d 146 (3d Cir. 1999)..........................................................................................7

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)..........................................................................................4

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377, 1388 (2014)……………………………………………………………13

*Leyse v. Bank of Am. Nat'l Ass'n*,
   804 F.3d 316 (3d Cir. 2015)........................................................................................11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................6,7,8,9

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884, 891 (3d Cir. 1977))…………………………………………………..4

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..........................................................................................*passim*

*Stoops v. Wells Fargo Bank, N.A.*,
   197 F. Supp. 3d 782 (W.D. Pa. 2016) ..................................................................... *passim*

*Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016) ........................4

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC*,
   No. 15-cv-5182, 2016 WL 4179150 (N.D. Ill. Aug. 8, 2016) ..........................................13

ii

*UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*,
 66 F.3d 621 (3d Cir. 1995)....................................................................................................13

**STATUTES**

47 U.S.C. § 227 ...........................................................................................................................10

Telephone Consumer Protection Act ..................................................................................... *passim*

### OTHER AUTHORITIES

Fed. R. Civ. P 12(b)(1) ......................................................................................................2, 3, 8, 14

Fed. R. Civ. P. 12(b)(6)...........................................................................................................2, 4, 9

S. Rep. No. 102-178, at 1–2 (1991) .............................................................................................2

*TCPA Litigation*, U.S. Chamber Institute for Legal Reform, at 1 (Oct. 2013) ..............................2

*Rules TCPA Implementation*, 30 FCC Record, 7979-80………………………………….……..15

Plaintiff is a professional litigant of cases under the Telephone Consumer Protection Act ("TCPA") and has filed 30 such cases (Plaintiff himself disclosed this fact in response to a Court Order issued by Judge Savage on June 21, 2018[See Exhibit "A" attached herewith]).    Plaintiff's Complaint in this matter used the "Kitchen Sink" method of throwing in parties and claims for action. This Motion seeks to dismiss all claims for lack of standing and failure to state a claim upon which relief can be granted.

Plaintiff James Everett Shelton ("Shelton"), far from being a victim of alleged violations of the Telephone Consumer Protection Act (TCPA), is a serial litigant who has a business model based upon capitalizing on and encouraging his victims (Defendants in his cases) to contact him through a telephone he has allegedly placed on a Do Not Call List.    Shelton has filed thirty (See Exhibits "A" and "B" plus the more recently filed Shelton vs FCS, Docket 2:18-cv-3723-NIQA) cases, each one seeking damages for alleged TCPA violations.    Shelton's business model has been documented on his own website.    Far from being an individual the TCPA was intended to protect, Shelton is a prolific self-litigator who has made a business out of suing companies and seeking statutory damages.

Shelton's company is called "Final Verdict Solutions," and his public

1

website, which can be found at [www.finalverdictsolutions.com](www.finalverdictsolutions.com).   Said website was recently altered, but until the last eight months of operation, said website almost gloats about Shelton's use of the TCPA.   If a company calls the business telephone number listed on his website, which is the same number that Shelton claims form the basis of his present lawsuit, Shelton will "play along" with that company, so he can then sue it for a purported TCPA infraction.

Utilizing this litigation business model, Shelton has filed at least twenty-nine TCPA cases (See Exhibit s "A" and "B").   Congress, however, never intended that the TCPA be used as an enterprising plaintiff's litigation goldmine. The Act is instead meant to protect consumers from actual nuisance and invasions of privacy. S. Rep. No. 102-178, at 1–2 (1991), *as reprinted in* 1991 U.S.C.C.A.N.  Thanks in part to litigious entrepreneurs and serial plaintiffs like Shelton, the TCPA "has become the poster child for lawsuit abuse," generating a "staggering amount of litigation" and exploding far beyond its original scope to instead become a "destructive force that threatens these money-making schemes and resource-wasting abuses must come to an end.

Plaintiffs like Shelton should not be allowed to use the TCPA as a lawsuit-generating weapon to turn a profit.   This Court should dismiss Shelton's complaint for two reasons:

-*First*, Shelton has no Article III standing to bring his claim. An alleged

2

telemarketing call to his business telephone line, which he advertises and

operates in part to generate TCPA lawsuits, does not constitute the kind of

"nuisance" or "invasion of privacy" that the TCPA was meant to remedy.

Shelton therefore has not suffered the kind of concrete, particularized harm

required to confer constitutional standing to sue. In other words, Shelton has

suffered no injury-in-fact, and the Court should dismiss his Complaint for

lack of standing under Federal Rule of Civil Procedure 12(b)(1).

-*Second*, even if Shelton could show a true injury-in-fact, he still lacks

prudential standing. Setting up a business line hoping he will receive

telemarketing calls, so he can then sue for statutory damages to turn a profit,

is not within the "zone of interests" the TCPA protects.

*See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016).

Shelton

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) authorizes dismissal of a complaint where the plaintiff lacks

constitutional standing to sue. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347,

357 (3d Cir. 2014); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

"The standing inquiry focuses on whether the party invoking jurisdiction had the

requisite stake in the outcome when the suit was filed." *Aichele*, 757 F.3d at 360

(citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)). Where, as here, the moving party advances a "factual attack," the District Court may look beyond the pleadings to ascertain the facts and determine whether they do not support the assertion of jurisdiction. *Id.* at 358. "In a factual attack, the Plaintiff bears the burden of proof that jurisdiction in fact exists, and the court need not presume the truth of the Plaintiff's allegations." *Team Angry Filmworks, Inc. v. Geer*, 171 F. Supp. 3d 437, 441 (W.D. Pa. 2016) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

## B. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

## III. ARGUMENT

## A. Shelton Lacks Constitutional Standing Because He Has Suffered No Concrete Injury

The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560- 61 (1992)). This case primarily concerns the first element. The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547-48 (quoting Raines, 521 U.S. at 820, n.3). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting *Lujan*, 504 U.S. at 560). "'For an injury to be "particularized," it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560, n.1). Meanwhile, "[a]

5

'concrete' injury must be 'de facto'; that is, it must actually exist." Id. (citing

Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not

"automatically satisf[y] the injury-in-fact requirement whenever a statute grants a

person a statutory right and purports to authorize that person to sue to vindicate

that right. Article III standing requires a concrete injury even in the context of a

statutory violation." Id. at 1549. A "bare procedural violation, divorced from any

concrete harm," does not satisfy the injury-in-fact requirement of Article III. Id.

"The party invoking federal jurisdiction bears the burden of establishing these

elements. Since they are not mere pleading requirements but rather an

indispensable part of the plaintiff's case, each element must be supported in the

same way as any other matter on which the plaintiff bears the burden of proof, i.e.,

with the manner and degree of evidence required at the successive stages of the

litigation." *Lujan*, 504 U.S. at 561 (internal citations omitted). Here, because

Defendants make only a facial attack on standing in connection with their motion

to dismiss, the Court only considers whether, assuming the truth of the allegations

in the FAC, Plaintiff has Article III standing.

Plaintiff's alleged concrete harm bears no connection to the alleged violation

of the TCPA. See *Spokeo*, 136 S.Ct. at 1549 (holding that "a bare procedural

violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact

requirement of Article III"). Accordingly, Plaintiff has not and cannot satisfy the

standing to sue requirements of Article III.

Standing is a crucial prerequisite to any federal lawsuit and requires that the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing each of these three elements. *Spokeo*, 136 S. Ct. at 1547. At the pleading stage, for individual claims and class actions alike, the plaintiff must allege facts demonstrating it has standing to sue. *Id.* & n.6. Merely invoking a federal statute is insufficient, on its own, to confer standing. *Id.* at 1549; *see also Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) ("_e proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated.")

An injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 136 S. Ct. at 1547 (citation and alteration omitted). To establish injury at the pleading stage, the plaintiff must allege facts demonstrating that "he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

7

The standing to sue doctrine is derived from Article III of the Constitution's limitation of the judicial power of federal courts to "actual cases or controversies." *Spokeo v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id. "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560- 61 (1992)).

This case primarily concerns the first element. The first element, injury in fact, "is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" *Spokeo*, 136 S.Ct. at 1547-48 (quoting *Raines,* 521 U.S. at 820, n.3). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting *Lujan*, 504 U.S. at 560). "'For an injury to be "particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560, n.1). Meanwhile, "[a] 'concrete' injury must be

8

'de facto'; that is, it must actually exist." Id. (citing Black's Law Dictionary 479 (9th ed. 2009)). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." Id. at 1549. A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. Id. "The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561 (internal citations omitted).

At least one court has found a plaintiff lacked Article III standing where, as here, the TCPA claim was based on calls to a business number that the plaintiff used specifically to drum up TCPA litigation. *Stoops*, 197 F. Supp. 3d at 798. In *Stoops*, the plaintiff purchased several cell phones, hoping she would receive telemarketing calls from companies, so she could then sue them for TCPA damages. *Id.* She registered her cell phones in Florida, to increase her chances of receiving telemarketers' calls. *Id.* at 799.  She plaintiff made no bones about her

intentions: "I have a business suing offenders of the TCPA[.]" *Id.*

The *Stoops* court rightfully found that, in those circumstances, plaintiff lacked constitutional standing because she hadn't suffered the kind of particularized, concrete harm the TCPA was designed to prevent. *Id.* at 800. Calls to cell phones that plaintiff had purchased to support her TCPA litigation business did "not adversely affect the privacy rights that [the TCPA] is intended to protect." *Id.* Because the plaintiff operated a business designed to generate litigation and profits from telemarketing calls, those "calls did not constitute the nuisance, invasion of privacy, cost, and inconvenience from which Congress intended to protect customers." *Id.* (citation omitted).

In the matter at hand, Shelton operates a business called "Final Verdict Solutions." His public website advertises two business ventures: a professional judgment recovery outfit and a TCPA litigation operation. His company's website even included a link describing this aspect of his business, in the top right-hand corner, under a tab called "JAMES' TCPA CASES". Shelton provided further information to those who click on the link, divulging the manner by which he drums up TCPA litigation: "I played along with your telemarketer script in order to find out who you really are. Now I am going to sue you for violating 47 U.S.C. § 227."

10







Apart from this case, by his own admission, Shelton has instituted twenty-

Nine (29) other TCPA lawsuits (See Exhibit "B").     He doesn't request that he

never is called back, instead he solicits information from the sales person  "play

along" with a potential telemarketer for the purpose of developing the current lawsuit.

Shelton is misusing the TCPA by turning it into a profit-generating scheme. This profit making purpose should deny Shelton Article III standing because neither provides the kind of particularized injury the TCPA is meant to remedy. *See Stoops*, 197 F. Supp. 3d at 800–01 (holding that plaintiff who brought TCPA claims as part of a litigation-generating business lacked standing because she suffered no actual injury-in-fact); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 323 (3d Cir. 2015)

("Someone with a generalized interest in punishing telemarketers, for example, would not qualify [for Article III standing] on that basis alone."). Whether Shelton's TCPA litigation operation was designed to make money or punish telemarketers is immaterial; either way, Shelton cannot establish that he suffered an injury-in-fact. He consequently lacks constitutional standing to bring his suit, and the Court should dismiss his claim under Rule 12(b)(1).

## B. Shelton Fails to State a Claim Because He Outside the Statute's "Zone of Interest"

There is also no prudential standing for Shelton to bring his claim because operating profit seeking TCPA lawsuit business falls outside of the "zone of interests" the TCPA protects. Where prudential standing does not exist, a plaintiff

fails to state a claim upon which relief can be granted. *Stoops*, 197 F. Supp. 3d at 803–06; *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15- cv-5182, 2016 WL 4179150, at *15 (N.D. Ill. Aug. 8, 2016).

Prudential standing requires three elements:

> (1) a litigant assert his or her own legal interests rather than those of third parties, (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances, and (3) a litigant demonstrate that her interests are arguably within the "zone of interests" intended to be protected by the statute, rule or constitutional provision on which the claim is based.
>
> *UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*, 66 F.3d 621, 626 (3d Cir. 1995) (internal citations and alterations omitted).

Shelton cannot establish the third element, which requires that "the injury he complains of . . . falls within the 'zone of interests' sought to be protected *by the statutory provision whose violation forms the legal basis for his complaint*." *Stoops*, 197 F. Supp. 3d at 804 (emphasis in original). The "zone of interests" test "applies to all statutorily created causes of action." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014); *Tel. Sci. Corp.*, 2016 WL 4179150, at *8. Courts have employed an exacting "zone of interest" test in the TCPA context, focusing their inquiry on "the Congressional intent of the statute

and whether the complainant's interests were among the sorts of interest [the TCPA was] specifically designed to protect." *Stoops*, 197 F. Supp. 3d at 805 (citation omitted).

In the *Stoops* case, in applying the "zone of interests" test, the court found it "unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA" because such individuals don't have "the sort of interest in privacy, peace, and quiet that Congress intended to protect. . . ." *Id.*; *see also Tel. Sci. Corp.*, 2016 WL 4179150, at *15 (holding that where the plaintiff intentionally engaged with potential telemarketers to build his business, his alleged injury fell outside of the TCPA's zone of interests).

Shelton, like the plaintiff in *Stoops*, files TCPA actions as a profit-making business. He has acknowledged as much, admitting on his company's website that he pretends to pose as an interested customer in order to generate lawsuits under the Act. Shelton, feigned interest in the company's services, and engaged with a sales representative who delivered a sales pitch—all so he could file his present class-action lawsuit. (Compl. ¶¶ 23–28, ECF No. 1.) Having developed this action as part of his lawsuit-generating business model, Shelton does not manifest "the sorts of interests the TCPA was specifically designed to protect." *Stoops*, 197 F. Supp. 3d at 805. His claim therefore fails for lack of prudential standing and should be dismissed under Rule 12(b)(6).

14

In addition, prudential standing requires that (1) a litigant assert his or own legal interests rather than those of third parties; (2) courts refrain from adjudicating abstract questions of wide public significance which amount to generalized grievances; and (3) a litigant demonstrate that her interests are arguably within the zone of interests indented to be protected by the statue, rule or constitutional provision on which the claim is based. *Stoops v. Wells Fargo Bank*, N.A., 197 F. Supp. 3d 782, 803-804 *13 (W.D. Pa. 2016) (citing *UPS Worldwide Forwarding v United States Postal Serv*., 66 F.3d 621, 625 (3d Cir. 1995)).

In enacting the TCPA, Congress's intent "was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." See *Stoop*s, 197 F. Supp. 3d at 797 (citing In re Rules Implementing the Tel. Consumer Prot. Act. of 1991, 30 FCC Rcd. at 7979-80). In passing the Act, Congress "was animated by outrage over the proliferation of prerecorded telemarketing calls to private residences, which consumers regarded as an intrusive invasion of privacy and a nuisance." Id.; (stating that "the TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls") (emphasis added). In this case.

### III.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Complaint must be dismissed in its

entirety and with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

Plaintiff has no standing to act as Plaintiff in this matter, nor has he suffered any

injuries related to the alleged violations of the TCPA. Plaintiff remains outside

the Zone of Interest for this statute. Further, Plaintiff's claims against individual

Defendant should be dismissed with prejudice for failure to state a claim upon

which relief can be granted.

Philadelphia, PA

October 5, 2018

Respectfully submitted,

**Law Office of Norman M. Valz, P.C.**

_____

Norman M. Valz, Esq.– Attorney for Movant
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street - 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758
Email: nvalz@msn.com

16

.

## Certification of service

The undersigned certifies that true and correct copies of the foregoing was served by the ECF System upon Plaintiff's counsel of record.

Philadelphia, Pennsylvania                    Respectfully Submitted,

October 4, 2018                    _____

Norman M. Valz, Esq.– Attorney for Movant
Law Office of Norman M. Valz, P.C.
PA I.D. No. 61338
205 Arch Street – 2nd Floor
Philadelphia, PA   19106
Tel. (215) 756-2424
Fax (215) 827-5758

# EXHIBIT C

**James Everett Shelton**
**316 Covered Bridge Road**
**King of Prussia, PA 19406**
**(484) 626-3942**
**jeshelton595@gmail.com**

**Plaintiff, Pro Se**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**FILED**

JUL -2 2018

By KATE BARKMAN, Clerk
_____Dep. Clerk

| | | |
|---|---|---|
| **JAMES EVERETT SHELTON** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action** |
| | ) | |
| **vs.** | ) | **No. 2:18-cv-02186** |
| | ) | |
| **CAPITAL ADVANCES LLC, et. al** | ) | |
| **Defendants** | ) | **Honorable Timothy J Savage** |

### NOTICE IN RESPONSE TO COURT ORDER (ECF NO. 5):

Plaintiff James Everett Shelton hereby responds to the Court's Order dated June 21, 2018 (ECF

No. 5), and hereby states that Plaintiff has been a Plaintiff seeking relief under the Telephone

Consumer Protection Act (TCPA) in the following cases:

**1. James E. Shelton v. Capital Advance Solutions, LLC & Charles Betta**
Magisterial District Court 38-1-25, District Justice James P. Gallagher
Case Number: MJ-38125-CV-0000067-2016
Date filed: 6/07/2016
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Defendants never entered their appearance(s), however, it is known that
defendants were represented by Christopher D. Devanny and/or Theresa Mullaney of Kent &
McBride, P.C. in other actions.
Disposition: Default Judgment in the amount of $12,189.20 entered 7/29/2016.
Other information: Case transferred to Court of Common Pleas of Montgomery County,
Pennsylvania to collect on the judgment, docketed at 2016-22261. Case domesticated to Superior
Court of New Jersey on 7/5/2017 to further collect on the judgment, docketed at DJ 104342 17.

**2. James E. Shelton v. Western Capital Financial Services, LLC DBA Western Capital
Funding & Joshua Hamrell**
Magisterial District Court 38-1-25, District Justice James P. Gallagher

Date filed: 6/29/2016
Case Number: MJ-38125-CV-0000080-2016
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: N/A. Defendants never entered their appearances.
Disposition: Settled.

### 3. James E. Shelton v. Doan Solutions, LLC & Thai Doan
Magisterial District Court 38-1-25, District Justice James P. Gallagher
Date filed: 8/03/2016
Case Number: MJ-38125-CV-0000092-2016
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: N/A. Defendants never entered their appearances.
Disposition: Withdrawn by Plaintiff.

### 4. James E. Shelton v. Endurance Warranty Services LLC
Cleveland Municipal Court
Date filed: 10/24/2016
Case Number: 2016 CVI 15320, Magistrate Jolan B. Vagi
Plaintiff's attorney: N/A. Plaintiff appeared pro se.
Defendant's attorney: N/A/
Disposition: Default judgment in the amount of $6,000. Judgment satisfied.

### 5. James E. Shelton v. Seafront Marketing LLC D/B/A Market Capital Funding LLC & Joseph J. Mullin

Magisterial District Court 38-1-25, District Justice James P. Gallagher
Date filed: 5/16/2017
Case Number: MJ-38125-CV-0000074-2017
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: N/A. Defendants never entered their appearances.
Disposition: Settled.

### 6. James E. Shelton v. First Standard Financial Company, LLC D/B/A First Standard Finance Company LLC & Carmine Berardi
Magisterial District Court 38-1-25, District Justice James P. Gallagher
Date filed: 5/16/2017
Case Number: MJ-38125-CV-0000075-2017, transferred to the Court of Common Pleas of Montgomery County, Pennsylvania and docketed at 2017-20635.
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Denis C. Dice, Winget, Spadafora & Schwartzberg, LLP
Disposition: Settled.

### 7. James E. Shelton v. Creditors Relief, LLC
Magisterial District Court 38-1-25, District Justice James P. Gallagher
Date filed: 5/16/2017
Case Number: MJ-38125-CV-0000076-2017

Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Suzanne Iazzetta, Iazzetta Law LLC (never entered an appearance).
Disposition: Settled.

### 8. James Everett Shelton v. Mark D. Guidubaldi & Associates LLC, Mark D. Guidubaldi, Sanford J. Feder, Corporate Bailout, LLC

United States District Court for the Eastern District of Pennsylvania
Date filed: 5/24/2017
Case Number: 2:17-cv-02367, Honorable Joel M. Slomsky
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Thomas A. Rogus, *Law Office of Thomas A. Rogus* (never appeared).
Disposition: Settled.

### 9. James Everett Shelton v. Doan Solutions, LLC & Thai Doan

United States District Court for the Eastern District of Pennsylvania
Date filed: 5/24/2017
Case Number: 2:17-cv-02368, Honorable Legrome D. Davis
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: N/A.
Disposition: Default Judgment in favor of the Plaintiff in the amount of $12,000, judgment satisfied.

### 10. James Everett Shelton v. ICapital Cash Group, Inc., ICapital Cash, Inc., Last Chance Funding Inc., LCF Group, Inc., Ed Ore, Edward Samways, Gary Damico

United States District Court for the Eastern District of Pennsylvania
Date filed: 6/09/2017
Case Number: 2:17-cv-02620, Honorable Timothy J. Savage
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: David B. Consiglio, *Campbell Miller Williams Benson Etter & Consiglio Inc.*
Disposition: Settled.

### 11. James Everett Shelton v. Merchant Source Inc., George M. Greco, Jr. & Anthony DeLillo

United States District Court for the Eastern District of Pennsylvania
Date filed: 6/23/2017
Case Number: 2:17-cv-02851, Honorable Gerald J. Pappert
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: N/A.
Disposition: Stipulated judgment in the amount of $21,430. Anthony DeLillo was dismissed voluntarily by Plaintiff. Judgment subsequently satisfied per an agreement with defendants.

### 12. James E. Shelton v. Insurance Resource Group & Brandon Wayne Elias

Magisterial District Court 38-1-25, District Justice James P. Gallagher
Date filed: 6/30/2017
Case Number: MJ-38125-CV-0000118-2017

Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: N/A.
Disposition: Settled.

### 13. James E. Shelton v. Thurman M. Smith
Magisterial District Court 38-1-25, District Justice James P. Gallagher
Date filed: 7/21/2017
Case Number: MJ-38125-CV-0000128-2017
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: N/A.
Disposition: Withdrawn.

### 14. James E. Shelton v. Student Loan Assistance Foundation, LLC, Michele R. Lear, & Lonny Lear
Magisterial District Court 38-1-25, District Justice James P. Gallagher
Date filed: 7/24/2017
Case number: MJ-38125-CV-0000131-2017
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Roy Taub, Greenspoon Marder, P.A. (never entered an appearance)
Disposition: Settled.

### 15. James Everett Shelton v. Fundbox, Inc., Rapid Response Marketing, LLC, & Kevin De Vincenzi
United States District Court for the Eastern District of Pennsylvania
Date filed: 7/24/2017
Case Number: 2:17-cv-03301, Honorable R. Barclay Surrick
Plaintiff's attorneys: Clayton S. Morrow, *Morrow & Artim, P.C.*, & Anthony I. Paronich, *Broderick & Paronich, P.C.*
Defendant's attorneys: Jeffrey S. Jacobson & Lauri A. Mazzuchetti, *Kelley Drye & Warren LLP* (representing defendant Fundbox, Inc.), A. Jordan Rushie, *Rushie Law PLLC* & Karl S. Kronenberger, *Kronenberger Rosenfeld LLP* (representing defendants Kevin De Vincenzi & Rapid Response Marketing, LLC).
Disposition: Pending. All defendants have answered the complaint.

### 16. James Everett Shelton v. LIG International, LLC, Yuri Lima, John Paul Elias, Danny Jimenez, Carlos Maloff, & Marco Josh Torres
United States District Court for the Northern District of Ohio
Date filed: 9/06/2017
Case Number: 1:17-cv-01868, Honorable Donald C. Nugent
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Michael McKay, *Roth Jackson Gibbons Condlin, PLC*.
Disposition: Settled.

### 17. James Everett Shelton v. National Gas & Electric, LLC
United States District Court for the Eastern District of Pennsylvania
Date filed: 9/11/2017

Case Number: 2:17-cv-04063, Honorable R. Barclay Surrick
Plaintiff's attorneys: Clayton S. Morrow, *Morrow & Artim, P.C.*, & Anthony I. Paronich, *Broderick & Paronich, P.C.*
Defendant's attorneys: Benjamin Williams (later withdrew from case), Erza Dodd Church, Michelle Pector, Andrew W. Katz, *Morgan Lewis & Bockius LLP*.
Disposition: Pending. Defendant has filed a Motion to Dismiss under Rule 12. This motion has not yet been ruled upon.

## 18. James E. Shelton v. One Way Funding, LLC & Joseph Reinhardt

Court of Common Pleas of Montgomery County, Pennsylvania
Date filed: 11/20/2017
Case number: 2017-27226
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: N/A.
Disposition: Default Judgment entered in favor of Plaintiff in the amount of $10,800.

## 19. James E. Shelton v. Green Star Capital Solutions LLC & Alexander Silverman

Court of Common Pleas of Montgomery County, Pennsylvania
Date filed: 1/01/2018
Case number: 2018-00009
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Donald Thomas, Lewis & Thomas, LLP (never entered an appearance).
Disposition: Default Judgment entered in favor of Plaintiff in the amount of $37,000.
Subsequently settled with defendants.

## 20. James Everett Shelton v. Centerpointe Lending Student Loan Services, Jeffrey R. Silhanek, & Scott E. Shaller

United States District Court for the Eastern District of Pennsylvania
Date filed: 4/19/2018
Case Number: 2:18-cv-01655, Honorable Mark A. Kearney
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Spencer Elg, *Kelley Drye & Warren LLP* (never entered an appearance).
Disposition: Settled.

## 21. James Everett Shelton v. Target Advance LLC

United States District Court for the Eastern District of Pennsylvania
Date filed: 5/17/2018
Case Number: 2:18-cv-02070, Honorable Nitza I. Quiñones Alejandro
Plaintiff's attorney: N/A. Plaintiff is appearing Pro Se.
Defendant's attorney: N/A. Defendant has not appeared.
Disposition: Pending. Defendant has been served with process but has not responded or appeared. Plaintiff has filed a Motion for Entry of Default & a Motion for Default Judgment.

## 22. James Everett Shelton v. Fast Advance Funding, LLC

United States District Court for the Eastern District of Pennsylvania
Date filed: 5/17/2018

Case Number: 2:18-cv-02071, Honorable Paul S. Diamond
Plaintiff's attorney: N/A. Plaintiff is appearing Pro Se.
Defendant's attorney: Norman M. Valz, *Norman M. Valz & Associates, P.C.*
Disposition: Pending. Defendant has filed a Motion to Dismiss under Rule 12. This motion has not yet been ruled upon.

### 22. James Everett Shelton v. Paramount Holding Company LLC d/b/a Paramount Payment Systems

United States District Court for the Eastern District of Pennsylvania
Date filed: 5/17/2018
Case Number: 2:18-cv-02072, Honorable Timothy J. Savage
Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendant's attorney: Richard N. Lipow, *Lipow Law Office*.
Disposition: Dismissed without prejudice by Plaintiff.

### 23. James Everett Shelton v. Capital Advances LLC, Carmela Morelli, & Vincenzo Morelli a/k/a Vincent Morelli

United States District Court for the Eastern District of Pennsylvania
Date filed: 5/24/2018
Case Number: 2:18-cv-02186, Honorable Timothy J. Savage
Plaintiff's attorney: N/A. Plaintiff is appearing Pro Se.
Defendant's attorney: N/A.
Disposition: Pending.

### 24. James Everett Shelton v. Arete Financial Group, Shunmin Hsu, & Phu Loc

United States District Court for the Eastern District of Pennsylvania
Date filed: 5/24/2018
Case Number: 2:18-cv-02187, Honorable Cynthia M. Rufe
Plaintiff's attorney: N/A. Plaintiff is appearing Pro Se.
Defendants' attorney: Norman M. Valz, *Norman M. Valz & Associates, P.C.*
Disposition: Pending.

### 25. James Everett Shelton v. RFR Capital, LLC, Roberts A. Signore, Ryan M. Cola, & Randall Richards

United States District Court for the Eastern District of Pennsylvania
Date filed: 5/30/2018
Case Number: 2:18-cv-02259, Honorable Petrese B. Tucker
Plaintiff's attorney: N/A, Plaintiff is appearing Pro Se.
Defendant's attorney: Sarah L. Wieselgren, Gordon Rees Scully Mansukhani, LLP
Disposition: Pending.

### 26. James Everett Shelton v. Pivotal Payment Systems, Inc. & Bruce Breunig, Jr. d/b/a Swipe for Zero

United States District Court for the District of New Jersey
Date filed: 5/30/2018
Case Number: 1:18-cv-09915-NLH-JS, Honorable Noel L. Hillman

Plaintiff's attorney: N/A. Plaintiff appeared Pro Se.
Defendants' attorney: Derek W. Edwards, Waller Lansden Dortch & Davis, LLP (did not enter appearance).
Disposition: The parties have reached a settlement.

## 27. James Everett Shelton v. National Student Assist LLC, Nir J. Goldin, Liberty Financial USA, LLC & Brian M. Roche.
United States District Court for the Eastern District of Pennsylvania
Date filed: 6/15/2018
Case Number: 2:18-cv-02545, Honorable Mitchell S. Goldberg
Plaintiff's attorney: N/A. Plaintiff is appearing Pro Se.
Defendants' attorney: N/A.
Disposition: Pending.

## 28. James Everett Shelton v. Merchant Flow Financial Corporation & Conroy Williamson
United States District Court for the District of New Jersey
Date filed: Plaintiff states that he mailed out this Complaint to the Court to be filed last week, however, it has not been docketed on PACER as of now.
Case number: Unknown yet.
Plaintiff's attorney: Pro Se.
Defendant's attorney: N/A.
Disposition: Pending.

## 29. James Everett Shelton v. IVEST 360, LLC d/b/a Fast Capital 360 & IVEST Syndication Group, Inc.
United States District Court for the Eastern District of Pennsylvania
Date filed: Plaintiff states that he mailed out this Complaint to the Court to be filed last week, however, it has not been docketed on PACER as of now.
Case number Unknown yet.
Plaintiff's attorney: Pro Se.
Defendant's attorney: No one has entered their appearance yet, however, it is known that defendants are represented by counsel in another action in this Court: Rigel Farr. Obermayer Rebmann Maxwell & Hippel LLP/
Disposition: Pending

**Date: July 2, 2018**                                         /s/ *James Everett Shelton*
                                                               James Everett Shelton
                                                               316 Covered Bridge Road
                                                               King of Prussia, PA 19406
                                                               (484) 626-3942
                                                               jeshelton595@gmail.com

                                                               Plaintiff, Pro Se