IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES E. SHELTON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**PRO SOURCE LENDING GROUP LLC, D/B/A FAST FUND GROUP, D/B/A FAST FUNDS GROUP**<br><br>**AND**<br><br>**BRITTNEY WILSON**<br><br>*Defendants.* | Case No.<br>24-4394<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
PRO SOURCE LENDING GROUP'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff has informed and settled with Defendant Pro Source Lending Group LLC before for the same conduct alleged here–illegally calling his personal cell phone without consent.

It apparently still has not gotten the message that Mr. Shelton doesn't want calls, leading to this lawsuit.

Though what's past is prologue, the only past to which Pro Source selectively cites to, and one that it seemingly has no issue with, is this Court's prior decision in *Shelton v. Target Advance LLC*. Marshalling the limited facts of that case, Pro Source weaponizes it for the proposition that Mr. Shelton has permanently lost standing to assert TCPA claims for calls to his personal cell phone number, thus giving Pro Source the right to continue calling Mr. Shelton without stopping, incessantly, despite Mr. Shelton's clearly expressed desire that they stop.

1

That contention runs contrary to the facts and the law, and the Court should deny the Defendant's motion in its entirety and permit the Plaintiff's claims to proceed to discovery, where Plaintiff will prove that his number is and was at all times relevant eligible for registration on the National Do Not Call Registry. The proper resolution of Defendant's motion requires the Court to permit this case to proceed to discovery to test the claims the Plaintiff makes out, not dismiss them, and the Plaintiff's standing to pursue them for the benefit of a class of others similarly situated, at the pleadings stage. The motion to dismiss is based on falsehoods that minimize the Plaintiff's advocacy and past experiences while maximizing assumptions based on utterly false premises. Defendant's motion should therefore be denied in its entirety.

## II.  FACTUAL BACKGROUND

Plaintiff filed this action on August 22, 2024, and Defendant Pro Source Lending Group (Defendant) moved to dismiss the case on substantially similar grounds on November 6, 2024. Thereafter, the Plaintiff filed an Amended Complaint (Am. Compl), ECF No. 12, on December 2, 2024, to rectify the deficiencies in the original complaint regarding Plaintiff's use of the number, as well as to add in an individual defendant who is also liable for the conduct at issue. Defendant Pro Source has filed a second motion to dismiss this amended complaint (ECF No. 17), on January 6, 2025. This response follows.

## III.  LEGAL STANDARD

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Here, Defendant has submitted an affidavit and additional evidence in order to support its contention that the case should be dismissed. In so doing, Defendant mounts a factual challenge. In such a challenge, this Court is "free to weigh the

evidence and satisfy itself as to the existence of its power to hear the case." *Id.* "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024). Moreover, to the extent that the motion does not properly address jurisdiction but instead sounds in the factual merits of the Plaintiff's claims, such motion also ought to be denied and the case proceed. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its

3

face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

## IV.   ARGUMENT

*A.   This Court's Holding in Target Advance Does Not Bar Plaintiff's Claims Here.*

The crux of the Defendant's motion and the Defendant's claims for why it is entitled to dismissal is that this Court's holding in *Shelton v. Target Advance LLC* precludes his claims here. No. 18-2070, 2019 WL 1641353, at *5 (E.D. Pa. Apr. 16, 2019). Not so. In that case, this Court's decision was squarely limited to whether, at that particular time, Mr. Shelton's number was a mixed-used business number, which it concluded it was because Mr. Shelton had used the number as part of his business, Final Verdict Solutions. Accordingly, the Court held that, during the time period at issue, Mr. Shelton lacked standing to assert Do Not Call Registry claims because business-to-business calls do not run afoul of the DNC Registry. *Id.* at *5–*6. But Defendant casts doubt on the Plaintiff's well-pled contention that, in June of 2019, he obtained a business number for Final Verdict Solutions and ceased using his cell phone number at issue in *Target Advance* for business purposes, thus altering the Court's analysis here.

To begin with, Defendant here cannot seriously claim that the Court's decision in *Target Advance* has preclusive effect in this case, which is why Defendant presumably moved its contentions that the Plaintiff's claims are barred by the doctrine of issue preclusion in a footnote. Under Third Circuit law, however, when a court determines that it lacks jurisdiction to hear the plaintiff's claims, as it did for the Plaintiff's Do Not Call Registry claims for failure to allege a sufficient injury-in-fact as to those claims in *Target Advance*, "any findings made with respect to the merit of those claims are not essential to the judgment and cannot support the application of collateral estoppel." *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 475 (3d Cir. 1997). That is the end of the matter. *Revlon* does not control because the *Target Advance* court concluded it did not have jurisdiction, and thus that decision cannot have preclusive effect.

4

To that end, this binding Third Circuit precedent establishes that the court in *Shelton v. Target Advance LLC*, the case upon which the Defendant relies for the proposition that Mr. Shelton lacks standing because he has not suffered an injury in fact because his number was a mixed use number at the time, did not "finally determine" anything. (Br. at p. 17). Because the Court determined that Mr. Shelton did not have standing to assert claims under the DNC Registry for business-to-business calls because he was not injured, and thus held that there was no justiciable controversy, it has no preclusive effect to Plaintiff's claims here. Such a holding is logical, as a Court cannot "finally determine" anything when it also determines it lacks jurisdiction to decide. As the Third Circuit remarked in *Bokunewicz v. Purolator Products, Inc.*, "everything after denial of jurisdiction" is "*dicta*, pure and simple." 907 F.2d 1396, 1399 (3d Cir. 1990). Even so, a careful review of *Target Advance* reveals that its holding was confined to the facts there, which adduced that, at all times relevant, Mr. Shelton's number was a mixed-use number used for both business and residential purposes. No longer is this the case.

In *Target Advance*, Mr. Shelton sued Target Advance, a business loan company, for calls made to his personal cell phone, which he also used as a number for Final Verdict Solutions as it was just starting out. 2019 WL 1641353, at *5. The Court's holding in *Target Advance* was limited to whether, during the time period at issue, the Plaintiff's telephone number was eligible for inclusion on the National Do Not Call Registry, which is limited to residential numbers and mixed-use numbers for residential purposes, noting that "it appears that the calls at issue were directed and made to the business use of the cellphone, and not to his personal use." *Id*. In sum, all *Target Advance* stands for is the unremarkable proposition that the Plaintiff could not sue for business-to-business Do Not Call list violations for the time that Plaintiff's cell phone was used for business purposes. As alleged in the Amended Complaint, and as outlined below, subsequent

5

to *Target Advance*, Plaintiff obtained a dedicated number for his business and returned his personal cell phone number to purely personal use.

A timeline is helpful to the Court's evaluation of the claims here:



Mr. Shelton obtained his telephone number in 2014, and placed it on the National Do Not Call Registry on June 26, 2015. (Am. Compl. ¶ 32). There can be no dispute that, during this time, Mr. Shelton had standing and that his registration was proper because he was a residential telephone subscriber exactly of the type intended to be on the National Do Not Call Registry and which the Registry was designed to protect. Contrary to the Defendant's assertions that it was "improper for Plaintiff to have *ever* added it to the NDNC back in 2015" (Br. at p. 17) (emphasis original), this registration was unquestionably proper since Mr. Shelton did not start his business, Final Verdict Solutions, until almost a year later, on March 7, 2016. Given Plaintiff's allegation in the complaint that he registered the number on the Registry "years prior to starting his business or using it in the interim time as a mixed-use number," (Am. Compl. ¶ 32), Defendant's allegations that Plaintiff has admitted otherwise, (Br. at p. 18 n.5), are especially perplexing.

Because he operated Final Verdict Solutions on a part-time basis at the time, Mr. Shelton used his personal cell phone at issue here in conducting his business while he was still a full-time student in university between March of 2016 and June of 2019. (Shelton Dec. ¶ 7). On April 16,

2019, the Court issued its ruling in *Target Advance.* And, shortly after Mr. Shelton graduated university, in June of 2019, Mr. Shelton devoted himself to Final Verdict Solutions full time, and obtained a business phone number for Final Verdict Solutions, 484-312-3300, which he uses to this day. (Am. Compl. ¶ 27). At that point, he ceased using his cell phone for business purposes whatsoever. (Am. Compl. ¶ 28, 29). Accordingly, during the time period between March 7, 2016 and June of 2019, Mr. Shelton may not have had standing to assert claims for business calls to his mixed-use number which was on the Do Not Call Registry. However, Mr. Shelton regained standing, and his number was protected under the Registry's provisions again, as soon as he ceased using it for business purposes, which was in June of 2019. It is clear that a lack of standing is curable, even during the pendency of a litigation. *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) (holding that patent holder who held patent at the time suit was commenced, transferred patent away, and then transferred patent back before trial had Article III standing); *cf. Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1309 (11th Cir. 2024) (holding receiver in Ponzi scheme regains standing to sue in the name of former fraudulent corporate structures). In Mr. Shelton's case, he regained standing to assert Do Not Call Registry claims to his solely personal telephone number as soon as he started using it again for solely residential, household, and personal purposes in June of 2019.

      Thereafter, in November of 2021, while his phone was appropriately protected under the DNC, Mr. Shelton informed and settled claims against Pro Source for the first time, asserting the same claims as here, for violations of the Telephone Consumer Protection Act. Thus, as far back as November of 2021, Pro Source had *actual notice* that Mr. Shelton used his cell phone for solely residential purposes, that he did not want to get calls from Pro Source, and that his number was on the Do Not Call Registry. (Shelton Dec. ¶ 12–14). For that matter, as Mr. Shelton

7

explains in his declaration attached hereto, in June of 2019, Mr. Shelton removed his personal cell phone number from his business website and other listings regarding his business, and ceased holding it out to the public as related to his business. (Shelton Dec. ¶ 10). Pro Source's response to that clear direction not to call and any lack of instruction to the contrary was to call Mr. Shelton anyway, through its employee, incessantly throughout July time of 2024, leading to this instant lawsuit, and while Mr. Shelton's number has been continuously and appropriately protected as a residential subscriber. (Am. Compl. ¶ 32). Thus, contrary to Pro Source's claims that Mr. Shelton "lured" it into calling him, the previous history between Plaintiff and Pro Source demonstrates the opposite, that Mr. Shelton wanted the contact to stop, but it did not.

Defendant isn't able to point to a single decision holding that someone who has lost standing cannot later rehabilitate or regain their standing, because that's not the law. In fact, the law says the *opposite*, that Mr. Shelton *can* regain his standing by, as here, ceasing to use his cell phone number for business purposes and establishing a clear delineation by only using his business number for business purposes and his cell phone for residential, personal, family, and household purposes, to as to render its inclusion on the National Do Not Call Registry eminently appropriate. This is because a dismissal for lack of standing is, "by definition, without prejudice." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 445 (2d Cir. 2022). As explained above, a "dismissal for lack of standing reflects a lack of jurisdiction." *Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 896 (3d Cir. 2020). A court that has determined it lacks jurisdiction lacks the power to decide further on the merits of the issues before it. Therefore, a plaintiff can regain standing when they have suffered a cognizable injury in fact sufficient to confer federal subject matter jurisdiction, including by receiving a call, as here, to their *purely residential* telephone number that is properly listed on the Do Not Call Registry exactly as required by the

statute. 47 C.F.R. § 64.1200(c)(2). Because this lawsuit was filed while Mr. Shelton had standing, for calls received in the time where Mr. Shelton had standing, and Mr. Shelton will continue to have standing at trial, under the plain text of the statute, it should proceed.

Defendant seems to contend that *ever* using a telephone number, at *any point*, for *any business purpose whatsoever*, confers an indelible mark on that telephone number rendering it *permanently ineligible* for inclusion on the National Do Not Call Registry. Not only does that proposition find no support in the law, but such a standard would essentially render no phone number eligible for inclusion on the Do Not Call Registry, as doubtlessly counsel for the Defendant, this Court, and its hardworking staff have occasionally taken Court-related calls on their personal cell phones. As such, on Pro Source's equation of a failure to prove temporary ineligibility for a right with a permanent lack of standing, "Shelton could theoretically sue Pro Source again and again, and perhaps eventually prevail." *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 280 (S.D.N.Y. 2024). And, as outlined above, the Court dismissed Mr. Shelton's claims in *Target Advance* on a *lack of standing*, not a ruling on the merits, as required to preclude him from relitigating his standing. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019) (to preclude a plaintiff "from relitigating—in any court, ever again—any claim encompassed by the suit" requires "a ruling on the merits."). Thus, Mr. Shelton's prior business use of his number does nor confer an indelible mark on its character, and Mr. Shelton has standing, and unquestionably has had such standing since June of 2019 because he has fallen within the TCPA's clear zone of interests since that time.

But even to the extent that this Court holds that the Court in *Target Advance* did make a factually-driven standing determination which might have some applicability here, this Court must also consider the specific facts which led to such a ruling. As outlined above, those facts

9

have changed with the passage of time, including now falling completely outside the TCPA's four year statute of limitations, thus rendering them inapplicable to any consideration for the calls at issue here. Mr. Shelton's number has been and remains a residential cell phone since at least June of 2019. Accordingly, he has standing to assert the claims he does here.

B.  *Mr. Shelton is a "Residential Telephone Subscriber" Under the TCPA and Falls Within the TCPA's Zone of Interests.*

Apart from relying on this Court's decision in *Target Advance*, Pro Source relatedly argues that Mr. Shelton is not a "residential telephone subscriber" under the TCPA's regulations, and thus lacks standing because he does not fall within the TCPA's zone of interests. Not so.

How does the FCC, the agency charged with implementing rules for Do Not Call Registry,[1] define "residential subscriber" as opposed to "business subscriber?" Quite simply. As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). And, under the TCPA, a "residential subscriber refers to a subscriber to telephone exchange service that is not a business subscriber" and a business subscriber is a "subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b), (d). This language which excludes only one type of service–telephone exchange services for businesses–from the protections afforded by the DNC. The fact the regulation contains only one exclusion demonstrates that the regulation errs on the side of being overinclusive, not underinclusive. And Mr. Shelton has pled and confirmed in his Declaration that he is a subscriber to a telephone exchange service for consumers, not one for businesses. (Am. Compl. ¶ 30); (Shelton Dec. ¶ 15).

---

[1] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. *See* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

What's more, the FCC has adopted enhanced protective standards for cellular telephone numbers. To this end, the FCC has established a presumption that "wireless subscribers who ask to be put on the national do-not-call list *are residential subscribers.*" *FCC Report and Order*, 18 FCC Rcd. 14014, 14039 (2003) (cleaned up) (emphasis added). This is so, *even if they also use such numbers partially for business purposes.* Indeed, the Fourth Circuit in *Krakauer v. Dish Network, L.L.C*, 925 F.3d 643, 657 (4th Cir. 2019), concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, by virtue of their mere registration, are *presumptively residential*. Courts nationwide have agreed. *See, e.g.*, *Tsolumba v. SelectQuote Ins. Servs.*, No. 5:22-CV-00712, 2023 WL 6146644, at *5 n.3 (N.D. Ohio Sept. 20, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones.").

The residential number presumption has been recognized by Courts nationwide. *See, e.g.*, *Sasin v. Enter. Fin. Grp., Inc.*, No. CV 17-4022-CBM-RAO, 2017 WL 10574367, at *5 (C.D. Cal. Nov. 21, 2017) (denying MTD for personal cell on DNC); *Hodgin v. Parker Waichman Llp*, No. 3:14-CV-733-DJH, 2015 WL 13022289, at *3 (W.D. Ky. Sept. 30, 2015) (same); *Phillips v. Mozes, Inc.*, No. 2:12-CV-04033-JEO, 2014 WL 12589671, at *6 (N.D. Ala. Sept. 3, 2014) (holding that allegation that cell phone was registered on DNC created reasonable inference of residential use); *Doyle v. JTT Funding, Inc.*, No. LACV1806145JAKASX, 2019 WL 13037025, at *8 (C.D. Cal. Dec. 2, 2019) (judgment for plaintiff).

At the pleadings stage, this is sufficient, under either Rule 12(b)(1) or 12(b)(6). But even crediting the Defendant's allegations for which it does not develop any contrary factual support, the Plaintiff does not hold his number out as a business line, and has not done so since June of 2019. (Shelton Dec. ¶ 9). Defendant is unable to point to a single piece of evidence supporting its

11

contention that Mr. Shelton has used the number at all for business purposes since that time because the truth and reality of the matter are that he has not. (Shelton Dec. ¶ 9, 12). The simple fact of the matter is that Mr. Shelton's cell phone number has not been held out to the public as a business number, if at all, at least since June of 2019.

On this point, neither *Bank* nor *Worsham* are particularly availing. In *Bank v. Indep. Energy Grp. LLC*, the Court at the pleadings stage *denied* the motion to dismiss, holding:

> Defendants claim that the number involved in this case has been held out to the public by Bank to be the business number of his law firm. They argue that Bank lists the phone number on his professional letterhead, on the signature block in court documents, and on other publicly available resources on the Internet. If Defendants are correct about the ways in which Bank has advertised this number, it would not qualify as residential under the TCPA. But the complaint does not allege the number at issue and this is a motion to dismiss.

No. 12-CV-1369, 2014 WL 4954618, at *4 (E.D.N.Y. Oct. 2, 2014). Later, after the defendant provided evidence as to the business use of the number, the Court cited to multiple facts, not present here, for its conclusion that, at the time of the alleged calls, the plaintiff:

> [H]eld out the Subject Telephone to the public as a business line. Specifically, Bank provides the Subject Telephone number on his business card, professional letterhead for his law practice, and in pleadings and court filings, and he provides it to clients, prospective clients, other attorneys, and business contacts. He also maintains his attorney registration through the New York Unified Court System utilizing the Subject Telephone number as his contact number.

*Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070, at *2 (E.D.N.Y. July 23, 2015). That's practically all *Bank* had to say on the matter, and no part of the decision addressed either way the effect of returning a previously mixed-use number to solely residential use, as are the circumstances here. In any event, Mr. Shelton didn't do half of the things as the plaintiff in *Bank* and ceased holding out his number out as a business number, if he ever did so in any manner, since at least June of 2019. (Shelton Dec. ¶ 9).

The Court in *Worsham v. Disc. Power, Inc.* similarly held that because "Worsham has

12

held publicly that the subject phone number is a business phone number, he cannot not register it with the DNC for purposes of avoiding business-to-business calls." No. CV RDB-20-0008, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021).  Mr. Shelton isn't alleged to have done any of that, and hasn't even put the number on his website or Google since at least June of 2019.

Nor has the Plaintiff here "removed himself" from the TCPA's legitimate zone of interests as did the plaintiff in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). Defendant would have the Court believe that *Stoops*—which predates the litany of subsequent rulings clarifying not only its limited usefulness but also cases *specifically addressing Mr. Shelton's very own standing as a Plaintiff*—stands for the proposition: "no standing for a serial plaintiff." Of course it doesn't. The facts of *Stoops*, the single case depriving a TCPA plaintiff of Article III standing based on the proven factual lack of an actual, pled injury in fact, and even then, only at summary judgment, are as follows: Ms. Stoops "purchased at least thirty-five cell phones and cell phone numbers with prepaid minutes for the purpose of filing lawsuits under the Telephone Consumer Protection Act." *Id.* at 788. She "collected a shoe box full of cell phones to fish for accidental wrong number calls." *Id.* at 796. Finally, she admitted that she specifically bought those cell phones "in order to manufacture" a TCPA lawsuit and admitted that "It's my business. It's what I do." *Id.* at 799.

Mr. Shelton isn't alleged to have done any of that. All he did was, for a period of time between March of 2016 and June of 2019, use his personal cell phone in the pursuit of a part-time business, a business that later obtained *its own telephone number*. In so doing, Mr. Shelton has re-inserted himself and his residential cell phone number into the zone of interests that the TCPA was designed to protect and re-established an injury-in-fact based on a violation of those regulations, and thus his standing. And, most importantly, this Court has explicitly held that Mr.

13

Shelton *does* have standing in the face of a nearly identical challenge on account of his prior litigation history. *Jacovetti L., P.C. v. Shelton*, No. 2:20-CV-00163-JDW, 2020 WL 5211034, at *3 (E.D. Pa. Sept. 1, 2020). The Defendant can't point to *a single case* in which Mr. Shelton was deprived of Article III standing to bring claims against the TCPA on the grounds that he is a meaningless "serial plaintiff." That's because none exist. Mr. Shelton is and since 2019 has been a residential telephone subscriber entitled to sue under the TCPA's provisions relating to calling numbers on the National Do Not Call Registry.

C. *Mr. Shelton Made an Internal Do Not Call Request More Than Two Years Before the Calls at Issue.*

And, to Pro Source's point that it supposedly wanted to "help Plaintiff apply for a business loan" and directed "commuications [sic] to Plaintiff's **business** use of the Phone Number," (Br. at p. 18), Pro Source steamrolls the fact that the Plaintiff informed and *settled TCPA claims with Pro Source in 2021 related to receipt of unwanted calls*. (Am. Compl. ¶ 22). It stretches the boundaries of logic and common sense to think that an individual who complained about unwanted calls and asked not to receive them less than two and a half years before would somehow change their mind and want calls without providing any indication otherwise. (Shelton Dec. ¶ 14). As such, nothing about Plaintiff's pleading in this regard is vague or constitute a threadbare recital of the elements of the cause of action. The Plaintiff has specified precisely what the Defendant did to violate 47 C.F.R. § 64.1200(d)(3): it failed to place the Plaintiff's number on its internal do not call list because he *continued to receive calls from the Defendant*.

The TCPA permits a consumer to revoke any purported consent to receive calls "at any time" and "through any reasonable means." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, Declaratory Ruling and Order, 30 FCC Rcd 7961, 7993-99, paras. 55-70 (2015). As a result, a consumer

14

"may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept." *Id.* at 7998-99, para 70. One would hardly question that informing Pro Source about this conduct of receiving unwanted calls and then settling those claims, is eminently a "reasonable manner" of requesting Mr. Shelton to not receive calls from Pro Source in the future and to be placed on Pro Source's internal Do Not Call List. Defendant misconstrues the applicable regulation, 47 C.F.R. § 64.1200(d)(3), which can be violated either by (1) refusing to place a plaintiff's number on an internal do-not-call list, or (2) calling a number, despite it being on an internal do-not-call list. *See Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1184 (D. Utah 2021). There can be no question that Mr. Shelton's number was on Pro Source's internal do-not-call list, including by Pro Source's counsel's own admissions and confirmation during the pendency of this litigation, but was called anyway.

      Relatedly, Pro Source had more than ample time, over two years, not to call the Plaintiff, but nevertheless did so. That the Plaintiff's subsequent requests confirming his desire not to receive calls, after he received further calls, did not fall within the "reasonable" thirty-day period under 47 C.F.R. § 64.1200(d)(3) is no matter. The Plaintiff has demonstrated that the Defendant lacks sufficient policies and procedures, at the pleadings stage, to avoid placing calls to persons like Plaintiff who have asked not to receive them. As the Court explained in *Delgado v. eMortgage Funding, LLC*, thirty days to honor a Do Not Call Request is the extreme boundary of "reasonableness" under the statute and that the question of whether a defendant's actions were reasonable is best left to the jury. No. 21-CV-11401, 2021 WL 4776774, at *4–*5 (E.D. Mich. Oct. 13, 2021). There, the plaintiff, as here, adduced evidence showing that the defendant failed to have procedures to adequately comply with such requests as an initial matter. *Id.* The court

15

concluded, similarly to here, that receiving "fourteen additional calls over the four-day period immediately following her request that the calls stop," raised enough of a factual issue of reasonability, including failing to have sufficient procedures in place to avoid such calls, for a jury to determine. *Id.* So too here, where the Plaintiff had previously requested that the calls stop, settled with the Defendant, and then directly communicated to Defendant's employee requesting that they stop, to no avail. *See also Menin v. Star Markets Co., Inc.*, No. 23-CV-11918-DJC, 2024 WL 4123522, at *5 (D. Mass. Sept. 9, 2024) (denying motion to dismiss and holding that whether time frame to process opt out request was reasonable was a question for the jury).

It bears repeating that the Plaintiff further told the Defendant's employee directly that he did not want calls, despite not being required to do so, and hoping that he would jog Defendant's memory, but they *still* did not do so by *personally* continuing to call him. As such, the Plaintiff has plainly pled that Pro Source had a reasonable time: well over two years, to place his number on its internal Do Not Call list and refrain from contacting him, but did so anyway. Defendant's continuous calls to Plaintiff despite these manifestations demonstrate that they do not have reasonable procedures for honoring internal do not call requests. Pro Source is liable for violating 47 C.F.R. § 64.1200(d)(3), just as alleged in the Complaint.

## V.  CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

Dated: February 5, 2025

>  */s/ Andrew Roman Perrong*
>  Andrew Roman Perrong, Esq.
>  Perrong Law LLC

16

2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

February 5, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.