IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES E. SHELTON,** individually and on behalf of all others similarly situated, | : : : | |
| | : | **CIVIL ACTION** |
| v. | : : | No. 24-4394 |
| **PRO SOURCE LENDING GROUP LLC, D/B/A FAST FUND GROUP, D/B/A FAST FUNDS GROUP, AND BRITTNEY WILSON** | : : : : | |

**McHUGH, J.**                                                                   **March 14, 2025**

## MEMORANDUM

Telemarketing calls are annoying to many consumers, leading Congress to enact the Telephone Consumer Protection Act ("TCPA"), which regulates telemarketing calls. The Act is partially enforced by two federal agencies, but also through provisions that create a private right of action rooted in strict liability imposing a monetary penalty for each violation.

For better or for worse, the availability of a private remedy draws both litigants and lawyers. In this case, James Shelton, a prolific plaintiff, and his counsel, Andrew Roman Perrong, equally prolific as a litigator under the TCPA, have joined forces to file a class complaint against Defendants Pro Source Lending Group LLC and Brittney Wilson, a Pro Source employee. Plaintiff alleges, on behalf of himself and others similarly situated, that Wilson impermissibly contacted him eight times over a 24-hour period on behalf of Pro Source, violating the TCPA. Both Defendants have moved to dismiss, in part on substantive legal grounds, and in part on the basis that as a serial litigator Plaintiff falls outside the protection of statute. The legal arguments advanced by the defense are unpersuasive, and the outcome of Shelton's prior litigation does not

warrant dismissal unless it binds him in this case, which it does not. The motions will therefore be denied.

**I.      Facts as Pled**

> *1. Plaintiff creates his phone number, and subsequently uses it for business purposes.*

In 2015, Plaintiff obtained his phone number and registered it on the National Do Not Call Registry ("NDNC"). Compl. ¶ 32, ECF 12; Pl.'s Decl. ¶ 2, ECF 22-1 ("Shelton Decl."). The phone number is a residential, non-commercial telephone number. Compl. ¶ 23. At the time when he got the number and registered it on the NDNC, Plaintiff contends that he used the number for personal and household purposes. Compl. ¶¶ 30-32. In 2016, however, Plaintiff formed his business, Final Verdict Solutions,[1] at which point he began using the phone number for both business and personal purposes. Shelton Decl. ¶ 7.

In 2018, Plaintiff sued Target Advance LLC, alleging violations of Section 227 of the TCPA. *See Shelton v. Target Advance LLC,* No. 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019). Plaintiff alleged that his phone number, the same number at issue here, was properly registered on the NDNC, and that Target Advance contacted Plaintiff to solicit business in violation of the TCPA. *Id.* at *1-2. At the time Plaintiff sued Target Advance, the phone number at issue was listed on his business website, and Plaintiff admits that he used it for business purposes. Shelton Decl. ¶ 7. The Court dismissed Plaintiff's claim because Section 227 only provides a private right of action to "residential" numbers. *Target Advance*, 2019 WL 1641353 at *6. Judge Quiñones held that because his number was accurately categorized as mixed-use and

---

[1] Defendants contend that the business existed for the purpose of generating TCPA claims. Pro Source Mot. to Dismiss, ECF 17-1 at 6.

because Plaintiff "held his phone number out to the world as a business phone number" he lacked standing under the TCPA on that claim. *Id.*

### 2. *Plaintiff resumes exclusive personal use of his phone number.*

Beginning in June 2019, Plaintiff purportedly ceased all business use of the phone number at issue. Shelton Decl. ¶¶ 7-12. Plaintiff states that he obtained a separate number for exclusive business use, and began using the number at issue for only "personal, family, and household purposes." *Id.* ¶¶ 5-7. Plaintiff explains that he has not held the number at issue out to the public as a business number, nor has it appeared on any website since at least 2019. *Id.* ¶¶ 9-10.

In 2021, Plaintiff sued Pro Source Lending Group LLC,[2] a defendant in this case, for TCPA violations. Compl. ¶¶ 36-38. The parties settled and Plaintiff alleges he asked to be placed on Pro Source's internal do-not-call-list. Shelton Decl. ¶¶ 13-14. Plaintiff has never been a customer of Pro Source, nor has he ever consented to receive calls from them. Compl. ¶ 35.

### 3. *The July 2024 phone calls and texts.*

The calls and texts underlying the present action all occurred within the span of twenty-four hours. On July 22, 2024, Plaintiff alleges that he received a call on his personal phone number from Defendant Wilson, a Pro Source employee, seeking to sell him a loan. Compl. ¶¶ 42-44. Wilson contacted Plaintiff from her personal cell phone number. *Id.* ¶¶ 43-45. About ten minutes later, Plaintiff received an email with a proposed loan application that Plaintiff did not sign. *Id.* ¶ 50. Within five minutes, Wilson also sent Plaintiff a text stating that she was reaching out on behalf of Fast Funds Group and inviting Plaintiff to ask her questions about the loan process. *Id.* ¶ 51.

---

[2] Pro Source also does business as "Fast Fund(s) Group" and sells loans. Compl. ¶¶ 5, 39.

A few hours later, Plaintiff received two additional calls from Pro Source: one from an individual named "Sean," and another call from Wilson. *Id.* ¶ 52. Simultaneously, Plaintiff also received a text from Wilson asking him to call her about the loan application. *Id.* ¶ 53.

Calls and texts continued into the next day. At 10:03 AM, Wilson called Plaintiff again. *Id.* ¶ 54. Immediately after, Plaintiff emailed Wilson, stating "Hi Brittney please stop calling me thank you!" *Id.* ¶ 55. At 10:06 AM, Plaintiff received another text from Wilson, again asking him about the loan application. *Id.* ¶ 56. At 10:09 AM, Wilson responded to Plaintiff's email, stating "Will do, thank you." *Id.* ¶ 55. Later that day, Plaintiff received one final call from Pro Source. *Id.* ¶ 58.

Based on this batch of unwanted phone calls and texts, Plaintiff now brings suit on behalf of himself and a class of similarly situated individuals.

**II.    Standard of Review**

Defendants move for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim. I construe the motion challenging subject matter jurisdiction under Rule 12(b)(1) as a facial attack, with the result that the analysis is identical for the arguments raised under both sections of the Rule. *Petruska v. Gannon Univ.*, 462 F.3d 294, 299 n.1 (3d Cir. 2006). The governing standard is set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

**III.   Discussion**

Plaintiff's class complaint contains two counts. In Count I, Plaintiff alleges that Defendants violated the TCPA by making telemarketing calls to him, despite his registration on the NDNC. 47 U.S.C. § 227(c); 47 C.F.R. 64.1200(c)(2). Count II asserts that Defendants also

4

violated the Statute in failing to maintain statutorily adequate internal policies, including an internal do-not-call list. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(d).

Defendant Pro Source argues that Plaintiff's number is not properly registered on the NDNC, and that Plaintiff's frequent TCPA litigation places him beyond the statute's zone of interests, therein depriving him of standing. Defendant Wilson joins in those arguments, and separately argues that that individual liability is unavailable under the TCPA.

### A. Plaintiff states a claim under the Section 227(c) and Section 64.1200(c)(2).

Under Section 227 of the TCPA, an individual may register their residential telephone number[3] on a National Do Not Call Registry. A registration on the NDNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2). The FCC has explicitly

---

[3] The FCC has yet to issue definitive guidance on numbers with a history of mixed-use, stating only that "we will review such calls as they are brought to our attention to determine whether or not the call was made to a residential subscriber." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2005 TCPA Order"), 20 FCC Rcd. 3788, 3793 (2005). A majority of other district courts, as well as the Ninth Circuit (the only circuit court to rule on this question) have found that mixed-use numbers are not per-se excluded from the TCPA's protections when registered on the NDNC, and that such numbers require a case-by-case evaluation. *See Chennette v. Porch.com, Inc.,* 50 F.4th 1217, 1223-1226 (9th Cir. 2022); *see also Mattson v. New Penn Fin., LLC,* No. 18-990, 2020 WL 6270907, at *2 (D. Or. Oct. 25, 2020) ("Although [plaintiff's] use of a phone line for personal calls does not automatically transform it into a residential line for purposes of the TCPA, neither does his use of a personal line for business calls automatically transform it into a business line."); *Clements v. Porch.com, Inc.,* No. 20-3, 2020 WL 5739591, at *5 (D. Alaska Sept. 24, 2020) (holding that phones used for home-based businesses fall within the TCPA's zone of interest); *Smith v. Truman Rd. Dev., LLC,* No. 18-670, 2020 WL 2044730, at *12 (W.D. Mo. Apr. 28, 2020) (holding that a cell phone used at least 60 percent for personal purposes can be residential); *Blevins v. Premium Merch. Funding One, LLC,* No. 18-377, 2018 WL 5303973, at *2-3 (S.D. Ohio Oct. 25, 2018) ("[C]ourts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes."). In *Target, supra,* a member of this Court concluded that mixed-use numbers are not residential, and therefore fall outside the Act.

I need not rule on this issue, because as this stage I must accept Plaintiff's allegation that during the relevant time frame, the phone was only used personally, and had been used exclusively so since June 2019.

"decline[d] to require that business and wireless numbers be removed from the Registry." Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 29 FCC Red. 9779, 9785 (June 17, 2008). Both Section 227 and its implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the NDNC and provide consumers with a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C § 227 (c)(5); 47 C.F.R. § 64.1200(c)(2).

Plaintiff purports to have registered his residential number on the NDNC in 2015, a full year prior to starting his business. Plaintiff also represents that he exclusively uses his number for personal purposes and has done so since at least 2019. Defendants have not presented any evidence to contradict Plaintiff's representation of his behavior over the past five years. Even if Plaintiff used his number for mixed purposes prior to 2019, NDNC registrations must be honored indefinitely, and the FCC has indicated that business numbers are not removed from the Registry. *See, e.g. National Do Not Call Registry FAQs*, FTC Consumer Advice, https://perma.cc/NVC5-ZNR5 ("No, your registration will never expire. The FTC will only remove your number from the Registry if it's disconnected and reassigned, or if you ask to remove it."). Given these regulations, Plaintiff's personal residential phone number is presumptively still on the NDNC.

Plaintiff therefore states a claim under Section 227(c): he alleges that he has a residential phone number on the NDNC, and that Defendants called Plaintiff on that phone number eight times over the span of 24 hours.[4]

---

[4] Under the TCPA, text messages are considered "calls." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 153 (2016). I will therefore address the 5 calls and 3 texts at issue as an aggregate of 8 calls.

### 1. *Plaintiff's prior litigation does not preclude this suit.*

Pro Source appears to argue that Plaintiff's claims are collaterally estopped, though this argument is advanced only in a footnote. Under the doctrine of collateral estoppel, a Plaintiff is precluded from relitigating a claim where (1) the identical issue was previously adjudicated, (2) that issue was actually litigated, (3) the previous determination was necessary to the decision, and (4) the party being precluded from relitigating the issue was fully represented in the prior action. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).

In 2019, Plaintiff brought suit in this district alleging similar violations of Section 227 against a different entity. At that time, however, Plaintiff advertised his number on his business website and also used it for business purposes, rendering it a mixed-use number. *Target Advance*, 2019 WL 1641353 at *6. The implementing regulations of Section 227 only prohibit telephone solicitations to "residential telephone subscriber[s]" on the NDNC. *See* 47 C.F.R. § 64.1200(c)(2). This led the Court to conclude that "because Plaintiff held the Phone number out to the world as a business phone number, he could not register it on the National Do Not Call Registry for purposes of avoiding business-to-business calls, such as those giving rise to this action," and it dismissed Plaintiff's Section 227(c) claims for lack of standing. *Target Advance*, 2019 WL 1641353, at *6.

As noted above, once registered, numbers are not removed from the NDNC, and five years have lapsed since the *Target* decision. In 2019, the phone number at issue was used for both business and personal purposes. In this action, filed in 2024, Plaintiff pleads that it is used exclusively for personal use, and has not been used for business purposes since 2019. In that respect, the issue here differs from the issue decided against Plaintiff in *Target*. And Defendants point to no legal authority supporting a conclusion that past commercial use of a number

permanently eliminates standing where the number continues to be listed on the NDNC.[5] Conceptually, there is a temporal aspect to standing, as illustrated by the fact that in some cases standing is deemed not to exist because the injury alleged is hypothetical, and in other instances a case allowed to proceed is later dismissed as circumstances change.

### 2. On the facts alleged, Plaintiff is not equitably estopped.

Pro Source argues that in modifying his usage of the number at issue since the Court ruled in 2019, Plaintiff placed Pro Source in a "gotcha" – making it impossible for Pro Source to discern when a cause of action that was previously declared unavailable became available yet again. Pro Source Mot. to Dismiss, ECF 17-1 at 13. Although once again the argument is not fully formed, I construe it as one asserting equitable estoppel. Grounded in common law, equitable estoppel prevents a party from enforcing a right against another party when the right was gained through misleading actions. The party asserting equitable estoppel must show "(1) a misrepresentation by another party; (2) which he reasonably relied upon; (3) to his detriment." *U.S. v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987).

If Plaintiff took down the number from his business website and then immediately sued Pro Source or another marketer, I would be strongly inclined to find estoppel. But nearly five years have passed during which Plaintiff avers personal use only. Such a change in circumstance, if ultimately proven to be true, is not easily categorized as a misrepresentation. And it cannot be said that Pro Source could reasonably rely on how Plaintiff engaged with the public five years

---

[5] On the facts as pleaded, this is not a case where Plaintiff's number was clearly a business number at the time when he registered it on the NDNC in 2015, which may raise a question as to whether his registration was void *ab initio*. Plaintiff instead asserts that he created the number and registered it on the NDNC in 2015 as a "residential telephone subscriber," "years prior" to forming his business in 2016, making his registration presumably proper. Compl. ¶ 32; ECF 22 at 6.

earlier. Legally, the onus is on Defendant to ensure that the number they are calling is not protected by the NDNC. With the number remaining on the NDNC, Pro Source could have checked whether Plaintiff's number was still listed on business websites or on Google as affiliated with his business before proceeding. The passage of time weighs against a finding of estoppel.

### B. Plaintiff's serial litigation does not bar standing.

For an individual to have standing under a "statutorily created cause of action," they must fall within the relevant statute's "zone of interest." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). The "zone of interest" inquiry considers "the Congressional intent of the statute" and whether the "complainant's interests were 'among the sorts of interests'" the statute was specifically designed to protect. *Chem Serv., Inc. v. Envtl. Monitoring Sys. Lab.- Cincinnati of U.S. E.P.A.*, 12 F.3d 1256, 1262 (3d Cir. 1993).

Seeking to remove Plaintiff from within the TCPA's zone of protected interests, Pro Source compares Plaintiff here to the plaintiff in *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). In *Stoops*, the plaintiff purchased at least thirty-five cellphones with the specific intent of receiving telemarketing calls so that she could bring lawsuits under the TCPA. *Id.* at 788. "In her deposition testimony, the plaintiff stated that she had a 'business suing offenders of the TCPA'; that she had specifically bought the cellphones in order to manufacture TCPA claims; and that she did not use the cellphones for any other purpose." *See Target Advance*, 2019 WL 1641353 at *4 (discussing *Stoops,* 197 F. Supp.3d at 799). The *Stoops* Court found that "because Plaintiff has admitted that her only purpose in using her cellphones is to file TCPA lawsuits, … the calls did not constitute the 'nuisance, invasion of privacy, cost, and inconvenience' from which Congress intended to protect consumers," depriving the plaintiff of standing for lack of injury-in-fact. *Stoops,* 197 F. Supp. at 800.

9

Plaintiff here has two phone numbers, not thirty-five. Historically, there was a distinct line between personal and business numbers. That line is eroding, but not to the point where it can be presumed that the only purpose in maintaining two numbers is to bait companies into making telemarketing calls.[6] This is especially so where the record has not yet been developed, and at this stage, there is no evidence that Plaintiff advertises his personal phone number to make it more likely to receive telemarketing calls than any other standard residential phone number.

If Defendant contacted Plaintiff eight times over the span of 24 hours, that would seem to be conduct the TCPA is intended to address. At this juncture I cannot rule as a matter of law that he falls outside the TCPA's "zone of interest" based solely on litigation history.[7]

### C. Plaintiff states a claim under Section 227(c)(5) and Section 64.1200(d).

In addition to the NDNC, companies must also maintain an "Internal Do Not Call" policy. 47 C.F.R. § 64.1200(d). This written policy must be available upon demand, must explain the company's plans to maintain a do-not-call list and train telemarketing personnel on its use, and must record and honor "do-not-call" requests for at least five years after a request is made. *Id*. Where an individual makes a do-not-call request, that request must be honored within a reasonable amount of time once made, up to thirty days. *Id.*

Plaintiff alleges that in 2021, Plaintiff and Pro Source reached a settlement regarding a previous batch of unwanted calls. Compl. ¶ 37. Plaintiff avers that throughout the settlement

---

[6] In fact, Plaintiff explicitly refutes this accusation in his sworn declaration, stating, "I do nothing to precipitate the illegal calls and messages which are placed to me … I have never proactively created or found TCPA claims nor entrapped businesses." Shelton Dec. ¶¶ 17-18.

[7] Congress explicitly included a private right of action within the TCPA, signifying its intention that members of the public be tasked with the Statute's enforcement. In my view, absent abuse of the statute by a serial litigant such as *Stoops,* a court's inquiry should focus on the merits of the case before it.

process, Plaintiff made it unambiguously clear that he no longer wished to receive calls from Pro Source, and that Defendant therefore had notice of Plaintiff's do-not-call request for two and a half years prior to its July 2024 calls.

Defendant disregards the prior dispute between the parties, and identifies July 22, 2024 as the relevant date, when Plaintiff first asked Defendant Wilson to cease contacting him with regard to the present batch of calls. By that measure, the calls are not actionable, because Pro Source would have been permitted thirty days within which to accommodate that request.

At this stage, I am obligated to accept Plaintiff's representations about the content of conversations surrounding the 2021 Settlement. Taking those allegations as true, Plaintiff should have been on Pro Source's internal do-not-call list as of two and a half years ago. Allegations that Defendants contacted Plaintiff while he was listed on their internal do-not-call list are sufficient to state a claim for violation of Pro Source's obligations under § 64.1200(d).

**D. Defendant Wilson may be held individually liable.**

Defendant Wilson argues that she may not be held liable under the TCPA. But her position ignores the plain text of the statute. Section 217 of the TCPA states: "In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or *employed by* any common carrier or user, *acting within the scope of [her] employment*, shall in every case also be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (emphasis added). Plaintiff alleges that Ms. Wilson was directly involved in the communications with him, using her personal cell phone, a claim that falls within the literal terms of Section 217.

Citing a series of district court cases, the defense contends that the Third Circuit, in *City Select Auto Sales Inc. v. David Randall Assocs., Inc.,* 885 F.3d 154 (3d Cir. 2018), has called into

11

doubt whether individual liability is permitted under the TCPA. Such a broad reading of *City Select* is untenable. There, the defendants were a business consulting company that sent a series of faxes, as well as the president and owner of the company. *Id.* at 156. There was conflicting evidence as to the personal involvement of the president, and the sole issue on appeal was whether the trial court properly charged the jury about the standard for imposing liability on a corporate officer. *Id.* at 161-62. *City Select* simply did not address the type of claim raised here and certainly cannot be read as repealing the clear language of the statute that creates liability for direct personal involvement.[8]

Plaintiff's claims against Wilson may therefore proceed.

## IV.    Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss will be denied. An appropriate order follows.

/s/ Gerald Austin McHugh  
United States District Judge

---

[8] It also bears mention that the discussion of personal liability of corporate officers was pure *dicta,* as the majority's opinion acknowledged when it observed that it was "neither litigated in the District Court nor fully briefed and argued on appeal," 885 F.3d at 161, a fact emphasized by Judge Shwartz in her concurrence. *Id.* at 163.