IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES E. SHELTON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**PRO SOURCE LENDING GROUP LLC, D/B/A FAST FUND GROUP, D/B/A FAST FUNDS GROUP**<br><br>**AND**<br><br>**BRITTNEY WILSON**<br><br>*Defendants.* | Case No.<br>24-4394<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO THE DEFENDANT'S MOTION TO STAY**

Pro Source Lending Group LLC. d/b/a Fast Fund Group d/b/a Fast Funds Group ("Defendant") filed a motion to stay this case pending the Supreme Court's decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.,* United States Supreme Court Case No. 23-1226, which it claims may impact the Federal Communication Commission's prior decision holding that cellular telephones can be properly subject to the National Do Not Call Registry. That isn't the question posed by *McLaughlin*, nor will any holding in *McLaughlin* affect this case. As other courts have done with identical motions filed by the same counsel as here, this Court ought to deny the instant motion to stay.

No stay is needed because no reliance on the FCC Order is required for this Court to come to the eminently reasonable conclusion that the TCPA protects residential cellular telephones (as opposed to just copper landlines), like Mr. Shelton's. As one Court put it, addressing a similar motion to stay: "even if the FCC's ruling is not entitled to deference, an

1

independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025). The Plaintiff's complaint, affidavit, and documents attached in opposition to the Defendant's recently denied motion to dismiss plainly pleads that the telephone number at issue is residential and the plain language of the statute supports a reading that cellular telephones can be placed on the National Do Not Call Registry. As such, deference to the FCC's Order is not required because any decision about the binding nature of the FCC's Orders will not impact the textualist reading of the TCPA's plain language. In other words, Plaintiff agrees the Court will conduct an "independent analysis" here as to whether residential cellular telephones are eligible to be registered on the National Do Not Call Registry *without* deferring to the FCC, so there is no need to stay this case pending the outcome in *McLauglin*.

Indeed, another Court denied a similar motion to stay a TCPA case based on *McLaughlin*, holding:

> "District courts have unquestionable authority to control their own dockets." *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014). "This authority includes 'broad discretion in deciding how best to manage the cases before them.'" *Id*. Accordingly, courts have "broad discretion over the management of pre[]trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1269 (11th Cir. 2001). A party moving for a stay "bears the burden of showing good cause and reasonableness." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997).
>
> Defendants' motion to stay does not demonstrate good cause or reasonableness because "a grant of certiorari by the Supreme Court does not in itself change the law" and in similar contexts "other district courts have denied motions to stay." *McCaskill v. Navient Sols., Inc.*, No. 8:15-cv-1559-T-33TBM, 2015 U.S. Dist. LEXIS 187045, at *2-3 (M.D. Fla. Dec. 2, 2015); *accord Heidarpour v. Cent. Payment Co.*, No. 4:15-CV-139(CDL), 2015 U.S. Dist. LEXIS 175276, at *5 (M.D. Ga. Nov. 25, 2015) (denying the defendant's motion to stay the putative TCPA class action pending the Supreme Court's decision in a Ninth Circuit case to which it had granted a petition for writ of certiorari); *cf. Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015) (refusing to assign precedential significance to grants of certiorari).

*Buxton v. Full Sail, LLC*, No. 6:24-CV-747-JSS-DCI, 2024 WL 4839012, at *1 (M.D. Fla. Nov. 20, 2024) (cleaned up). Moreover, as the Western District of Wisconsin has held in denying an *identical* motion filed by the *same law firm* as here in a *text order* denying the motion after oral argument, "For the reasons stated at the conference, the court DENIED that motion." *Bachhuber v. Sienna Marketing & Consulting, Inc.*, No. 3:25-cv-00010, ECF No. 25 (W.D. Wis. Apr. 9, 2025).

  This Court should hold the same.

## Background

  Plaintiff filed this action on August 22, 2024, and Defendant Pro Source Lending Group (Defendant) moved to dismiss the case on November 6, 2024. Thereafter, the Plaintiff filed an Amended Complaint (Am. Compl.), ECF No. 12, on December 2, 2024, to rectify the deficiencies in the original complaint regarding Plaintiff's use of the number, as well as to add in an individual defendant who is also liable for the conduct at issue. Defendant Pro has filed a second motion to dismiss this amended complaint (ECF No. 17), on January 6, 2025. The basis for that motion was for much the same grounds as the Defendant seeks a stay here: claiming that the Plaintiff is not a "residential" telephone subscriber whose cell phone on the National Do Not Call Registry is entitled to protection. The Plaintiff filed a response in opposition (ECF No. 22) on February 5, 2025. This Court issued an order denying the motion on March 14, 2025 (ECF No. 27), holding that, if true, the Plaintiff's allegations that he ceased using his number for business purposes allowed him to avail himself of the protections of the Do Not Call Registry. Thereafter, Defendant filed the instant motion to stay on March 28, 2025 (ECF No. 31). This response follows.

**Argument**

I.      **Plaintiff has sufficiently alleged that his telephone is a residential telephone.**

As this Court itself has held in reciting the facts of the Complaint as pled, "Plaintiff alleged that his phone number, the same number at issue here, was properly registered on the NDNC, and that Target Advance contacted Plaintiff to solicit business in violation of the TCPA." *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *1 (E.D. Pa. Mar. 14, 2025). "Beginning in June 2019, Plaintiff purportedly ceased all business use of the phone number at issue. Shelton Decl. ¶¶ 7-12. Plaintiff states that he obtained a separate number for exclusive business use, and began using the number at issue for only "personal, family, and household purposes." *Id.* ¶¶ 5-7. Plaintiff explains that he has not held the number at issue out to the public as a business number, nor has it appeared on any website since at least 2019. *Id.* ¶¶ 9-10." *Id.* at *2.

And, as this Court has cited in its footnote in this case when discussing the issue of mixed use numbers, acknowledging a textualist approach and the lack of FCC guidance on the issue:

> The FCC has yet to issue definitive guidance on numbers with a history of mixed-use, stating only that "we will review such calls as they are brought to our attention to determine whether or not the call was made to a residential subscriber." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2005 TCPA Order"), 20 FCC Rcd. 3788, 3793 (2005). A majority of other district courts, as well as the Ninth Circuit (the only circuit court to rule on this question) have found that mixed-use numbers are not per-se excluded from the TCPA's protections when registered on the NDNC, and that such numbers require a case-by-case evaluation. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223-1226 (9th Cir. 2022); *see also Mattson v. New Penn Fin., LLC*, No. 18-990, 2020 WL 6270907, at *2 (D. Or. Oct. 25, 2020) ("Although [plaintiff's] use of a phone line for personal calls does not automatically transform it into a residential line for purposes of the TCPA, neither does his use of a personal line for business calls automatically transform it into a business line."); *Clements v. Porch.com, Inc.*, No. 20-3, 2020 WL 5739591, at *5 (D. Alaska Sept. 24, 2020) (holding that phones used for home-based businesses fall within the TCPA's zone of interest); *Smith v. Truman Rd. Dev., LLC*, No. 18-670, 2020 WL 2044730, at *12 (W.D. Mo. Apr. 28, 2020) (holding that a cell phone used at least 60 percent for personal purposes can be residential); *Blevins v. Premium Merch. Funding One, LLC*, No. 18-377, 2018 WL

> 5303973, at *2-3 (S.D. Ohio Oct. 25, 2018) ("[C]ourts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes."). In *Target, supra*, a member of this Court concluded that mixed-use numbers are not residential, and therefore fall outside the Act.
>
> I need not rule on this issue, because as this stage I must accept Plaintiff's allegation that during the relevant time frame, the phone was only used personally, and had been used exclusively so since June 2019.

*Id.* at *3 n.3. As this Court has also concluded, the Plaintiff's pleadings as to the residential use of his number are sufficient to conclude that the Plaintiff's number is a residential one permitted to be registered on the National Do Not Call Registry, "Plaintiff purports to have registered his *residential* number on the NDNC in 2015, a full year prior to starting his business. Plaintiff also represents that he exclusively uses his number for personal purposes and has done so since at least 2019. Defendants have not presented any evidence to contradict Plaintiff's representation of his behavior over the past five years. . . . Given these regulations, Plaintiff's *personal residential* phone number is presumptively still on the NDNC." *Id.* at *4 (emphasis added).

As such, there's no need to stay this matter for this Court to determine if the Hobbs Act requires this Court to accept the FCC's legal interpretation of if a cellular telephone must be construed as a "residential telephone line," because this Plaintiff plainly alleges, and this Court has acknowledged, that his cellular telephone is his residential telephone line.

> **II.    The National Do Not Call Registry Applies to all Consumer Telecommunications Services based on the Plain Language of the Statute. As such, a Stay to Address the FCC's Authority is Not Necessary.**

Defendant's argument that a cell phone cannot be a "residential" telephone number, and therefore that no cellular telephone is entitled to the TCPA's Registry protections, rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). As with any question of statutory interpretation, the Court's inquiry "begins

5

with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). That analysis shows that residential cell phones are plainly eligible for inclusion in the National Do Not Call Registry, as Defendant concedes the consensus of authority in the Third Circuit has concluded. As such, the Plaintiff need not, and does not, rely on the FCC's interpretation of an unambiguous statutory provision.

In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers." *See* 47 C.F.R. § 64.1200(c)(2) (limiting DNC Registry to "residential" subscribed numbers). Reading the term "residential" to exclude other services, such as cellular telephone services, used for personal, household purposes, just as Plaintiff has pled and Court ruled here, is inconsistent with multiple canons of construction. Without a controlling statutory definition, as here, the term "residential" takes on its "ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). And, under the fixed-meaning canon, "[w]ords must be given the meaning they had when the text was adopted." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 78 (2012).

With respect to the TCPA, there are potentially two relevant time frames to consider: 1934, when the Telecommunications Act of which the TCPA is a part was enacted, and 2003, when Congress passed the Do-Not-Call Implementation Act. Regardless of which the Court chooses, the meaning of the term "residential," as an adjective modifying "telephone subscribers," is the same. "Residential" means "used as a residence *or by residents*; adapted to (1936)/restricted to (2003) . . . residences; of or connected with (1936)/relating to (2003) . . . residence or residences." *Compare* Webster's New Collegiate Dictionary, Eleventh Ed. (2003) *with* Webster's Collegiate Dictionary (1936) (emphasis added) (cleaned up).

Especially in Webster's 2003 sense of "residential" meaning "restricted to" residences, the term "residential" is contrasted with the adjective "nonresidential," which is "not used as" or

6

"not restricted to" residences or by residents. Webster's New Collegiate Dictionary, Eleventh Ed. (2003). In using "residential" language, Congress realized that, in the future, traditional residential forms of telecommunication like copper landlines may come to be supplanted by other technologies, like T1 lines, Fiber Optics, VoIP, and cellular technologies. In using the term "residential," Congress meant what it said. It meant to contrast residential service *uses* from nonresidential *uses* and restrict DNC Registry protections to the former, regardless of the type of technology that the consumer chooses to use or a technology that can change. That interpretation is consistent with the language of the Telecommunications Act, which applies to all forms of communication, including using technologies yet to be developed. 47 U.S.C § 153(53) (defining a telecommunications service "regardless of the facilities used").

      Any other reading arbitrarily limits the scope of the term "residential" to read "copper landline." No part of the statute contains a suggestion that the general term "residential" should be given such a limited, narrow meaning. Instead, the statute suggests, just as *Defendant Pro Source itself has already argued*, that there is a distinction between "residential" and "nonresidential," i.e. commercial, *uses* and *purposes*, regardless of the *technologies* used. *See, e.g.*, Mot., ECF No. 17-1, at ECF p. 6 ("wherein [Pro Source] demonstrated how Plaintiff used the telephone number at issue for business purposes"), p. 7 ("Plaintiff used this number for business purposes and thus could not register it on the NDNC."), p. 8 (describing Mr. Shelton's cellphone as a business cellphone and implicitly distinguishing the same from a residential cellphone), p. 9 ("he has used the Phone Number for *business purposes* and held it out to the world as a business number" . . . Plaintiff, however, fails to explain how Pro Source was expected to know any of this, and why it would not be entitled to rely on the *public-facing use* of the Phone Number *as a business number*.) (emphasis added), p. 14 (discussing issue of standing

7

for recipients of text messages to a residential telephone number, and following that a residential cellphone is eligible for registration because a landline cannot receive text messages). The position Pro Source takes now is therefore *completely inconsistent* with that it took in its failed motion to dismiss, where it stated that the *use* of the number, and not the *technology used*, is the determining factor for whether a number is "residential" and thus eligible to be on the Registry.

Pro Source's previous position was in lockstep with the Plaintiff's and the statutory text. Importantly, at the time the DNC Registry provisions of the TCPA were enacted, the Code of Federal Regulations specifically relating to "Telecommunications" defined a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d).[1] A "business subscriber" was defined as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b). Accordingly, "consumers" who subscribe to "telephone exchange services" are protected by the DNC Registry. "Businesses" who subscribe to "telephone exchange services" for businesses are not. And a "telephone exchange service" clearly implicates cell phones, in that cell phone service is provided, "through a system of switches, transmission equipment, or other facilities (or combination thereof) by which a subscriber can originate and terminate a telecommunications service." 47 C.F.R. § 64.2305(g)(1)(B). And a "telecommunications service" means "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, *regardless of the facilities used*." 47 U.S.C § 153(53)

---

[1] The regulatory definitions of "business subscriber" and "residential subscriber" were enacted in 1999, prior to Congress' creation of the Do Not Call Registry in 2003. *Compare* 47 C.F.R. § 64.1200(e), *citing* 18 F.C.C. Rcd. 14014, 14032, 14043; 2003 FCC LEXIS 3673 at ¶¶ 22, 42 (June 26, 2003) (Do Not Call Registry was enacted in 2003) *with* 47 C.F.R. § 64.2305(b) and (d) (effective date of regulations is October 5, 1999).

(emphasis added). And "telecommunications" means "the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received." 47 U.S.C § 153(50). That is to say, a "telephone exchange service" for consumers allows a subscriber to place and receive information, such as telephone calls, regardless of the facilities used, such as a cell phone or landline.

As such, "according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes…*i.e.*, for personal activities associated with his or her private, domestic life.'" *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) (citing *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 206 (S.D.N.Y 2024)). In other words, the analysis turns on *how* the subscriber uses the line, not what *device or technology* they use it on. Indeed, as our sister court in the Middle District of Pennsylvania held last year:

> The best reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" both modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," Section 227(c)(1) describes a "telephone subscriber" who has subscribed for "residential," i.e., personal, purposes. "Residential" is therefore used in the broader sense of "relating to a resident" to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024).

Indeed, the TCPA itself distinguishes between "business subscriber" and "residential subscriber" in 47 U.S.C. § 227(a)(2)(A): "The term "established business relationship" … "shall include a relationship between a person or entity and a *business subscriber* subject to the same terms applicable under such section to a relationship between a person or entity and a *residential*

9

*subscriber*." (emphasis added). This shows "Congress used the term 'residential' in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber." *Cacho*, 739 F. Supp. 3d at 206. This distinction "would make little sense if the term 'residential subscriber' referred to users with landlines physically located in their residences, rather than users who use their phones for residential purposes, because many individuals operate home-based businesses." *Id.* at 207.

As such, this Court need not even consider whether the FCC's interpretation that residential cell phones are eligible for registration on the National Do Not Call Registry has binding effect because the court can so hold so using the plain tools of statutory construction without regard to the FCC's interpretation. Thus, regardless of whether the Supreme Court holds in *McKesson* the FCC's interpretation of the TCPA is legally binding or not, this Court's interpretation will be driven by traditional tools of statutory construction, which dictate the correct result, that residential cell phones can be registered on the DNC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374, 14 (2024) ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences.").

### III. The overwhelming majority of courts to consider the issue at bar have held that DNC Registry's protections apply to cell phones.

"[T]he majority of courts throughout the country . . . have held that cell phones . . . are entitled to the TCPA's protection as residential telephones." *Tessu v. AdaptHealth, LLC*, No. SAG-23-0364, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023). This is consistent with the plain, textualist reading of the TCPA articulated above.[2] As such, the question addressed when the

---

[2]    *See also Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) ("As Hall alleges that she was the owner and subscriber of a cell phone number on the Do-Not-Call Registry that received unsolicited text messages in violation of the TCPA, she has stated an injury in fact

Supreme Court granted certiorari in *McLaughlin* to address: "Whether the Hobbs Act required the district court in this case to accept the FCC's legal interpretation of the Telephone Consumer Protection Act", will not be dispositive on the question presented.

---

sufficient to satisfy Article III."); *Barton v. JMS Assoc. Mktg., LLC*, No. 21-35836, 2023 WL 2009925, at *1-2 (9th Cir. Feb. 15, 2023) (explaining the "district court . . . erred in declining to award damages" under 47 C.F.R. § 64.1200(c)(2) for calls to the plaintiff's "cell phone"); *Kemen v. Cincinnati Bell Tel. Co. LLC*, No. 1:22-CV-152, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) ("To be sure, cell phones *can* be 'residential' under the TCPA."); *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *4 (D.N.J. Jan. 11, 2023) ("The consensus in [the Third] Circuit is that Do Not Call claims may apply to cell phones."); *Noviello v. Holloway Funding Grp.*, No. 3:22-CV-52-BN, 2023 WL 128395, at *5 (N.D. Tex. Jan. 9, 2023) ("[C]ourts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes."); *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *3 (E.D. Wis. May 16, 2022) ("The TCPA and its enabling regulations also apply to wireless telephone numbers such as Plaintiff's, which were personal use, not associated with any business, and registered on the National Do Not Call Registry."); *Rose v. New TSI Holdings, Inc.*, No. 21-CV-5519 (JPO), 2022 WL 912967, at *2 (S.D.N.Y. Mar. 28, 2022) (rejecting the defendant's argument that the plaintiff "has no private right of action under the TCPA because he alleges only that he received prerecorded messages on his cellphone, thus failing to establish that he is a residential telephone subscriber"); *Hunsinger v. Alpha Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022) ("courts have held that cellular telephones can qualify as residential telephones, so long as a plaintiff pleads that the cellular telephone is used for residential purposes"); *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2022 WL 325722, at *3 (D. Mass. Feb. 3, 2022) (agreeing that the "TCPA's DNC protections apply to cellular phone numbers"); *Dudley v. Vision Solar, LLC*, No. CV 21-659, 2021 WL 3077557, at *5 (E.D. Pa. July 21, 2021) ("The consensus in this Circuit is that Do Not Call claims may apply to cell phones."); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656 (W.D. Tenn. 2020) ("A cellular telephone can satisfy the "residential telephone subscriber" element of § 64.1200(c) & (d)."); *Mestas v. CHW Grp. Inc.*, 508 F. Supp. 3d 1011, 1028 (D.N.M. 2020) ("[o]ther courts that have considered the application of § 64.1200(e) have concluded that a cell phone user can qualify as a residential telephone subscriber under § 64.1200(c) and (d)"); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) (rejecting the defendant's contention "that cell phones, as a matter of law, cannot be residential subscribers," based on "common sense and the greater weight of authorities"); *Beal v. Outfield Brew House, LLC*, 29 F.4th 391 (8th Cir. 2022).

## Conclusion

At bottom, Plaintiff sufficiently alleges that his telephone is a residential telephone, and as such, staying this matter to determine the validity of an FCC Order upon which neither he nor Pro Source will rely, unnecessary.

Dated: April 11, 2025

                                        */s/ Andrew Roman Perrong*
                                        Andrew Roman Perrong, Esq.
                                        Perrong Law LLC
                                        2657 Mount Carmel Avenue
                                        Glenside, Pennsylvania 19038
                                        Phone: 215-225-5529 (CALL-LAW)
                                        Facsimile: 888-329-0305
                                        a@perronglaw.com

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

April 11, 2025

                                        */s/ Andrew Roman Perrong*
                                        Andrew Roman Perrong, Esq.